The defendant was awarded a decree of divorce on a cross-complaint alleging adultery. She has appealed from the judgment on the principal grounds that the court erred in refusing to take jurisdiction over the custody of a child and in its award of alimony.
The plaintiff is a successful surgeon in Middletown *Page 314 
and at the time of trial was forty-nine years of age. The defendant was forty-three. They married in 1928 and lived together in apparent harmony until March, 1943. There are no children of the marriage and they had discussed the desirability of adopting a child. In August, 1942, the plaintiff was attending a professional meeting in Minneapolis. He wrote the defendant that he had found a beautiful baby boy they could adopt. She asked him to bring the baby home and suggested that he bring a girl too. He brought the baby home. His name was Michael. The plaintiff did not give the defendant any information about the child's parentage at this time.
In March, 1943, the plaintiff went to Chicago to study. He telephoned the defendant and told her to look in the top drawer of his desk, as there was a paper there she would be interested in seeing. The paper was a copy of Michael's birth certificate. It indicated that the plaintiff was his father and a former Middletown nurse his mother and that the plaintiff had committed adultery in 1941. The parties continued to occupy the same house until August, 1945, but did not live as man and wife after March, 1943. At that time the plaintiff left to obtain a Reno divorce but did not prosecute the action as the parties could not agree on terms. In October of the same year he brought this suit, alleging intolerable cruelty.
It will be necessary to go into some detail with regard to the parties' respective financial conditions because of the claim that the award of alimony in a lump sum was erroneous. The net income of the plaintiff after income taxes rose from about $13,600 in 1940 to $20,000 in 1945. His gross income for the first nine months of 1946 was $39,000. In 1943, *Page 315 
after the disclosure of Michael's paternity, the plaintiff's total personal property, amounting to $34,000, was divided equally between the parties.
At the time of trial the defendant's assets included the furnished house, given to the defendant by the plaintiff and assessed at $12,910 but worth more; a $10,000 annuity policy payable to her at the rate of $50 per month starting at age fifty-five; four endowment policies maturing in 1955 for $2000 each; four war bonds maturing in 1955 for $1000 each; an automobile and $500 in cash. She is also the irrevocable beneficiary of an $18,000 life insurance policy of the plaintiff. She has no separate income.
The plaintiff had his practice and professional equipment and war bonds worth $40,000 at the time of trial, standing in his and Michael's names. He maintained three insurance policies, of which Michael is the beneficiary, aggregating $25,000, and a savings bank account for Michael of $1000, of which he is trustee. He is the sole support of his father, aged seventy-eight.
Both parties are attached to Michael. He has lived with the defendant and she has been a fond and attentive mother to him, devoting herself to his well-being, training and rearing.
The evidence supports these findings. The forty-three paragraphs of the draft finding, with one exception, add nothing material thereto and are not in substantial conflict therewith. They are rather an elaboration thereof. The exception referred to is the fact that shortly after the principal trial the plaintiff and the mother of the child started proceedings for the adoption of Michael by the plaintiff in the Probate Court of which his then counsel was judge. *Page 316 
The trial court held that it had no jurisdiction of the defendant's prayer for the custody and support of the child. Divorce, in this state, is the special creature of statute. Dunham v. Dunham, 97 Conn. 440,443, 117 A. 504. The applicable statutes, General Statutes, 5184, 5186, 5187, refer to children of the marriage in terms or by implication. They can be read in their context in no other sense. Michael is not a child of this marriage.
"The Superior Court of this state as a court of law is a court of general jurisdiction. It has jurisdiction of all matters expressly committed to it and of all others cognizable by any law court of which the exclusive jurisdiction is not given to some other court. The fact that no other court has exclusive jurisdiction in any matter is sufficient to give the Superior Court jurisdiction over that matter." State ex rel. Morris v. Bulkeley, 61 Conn. 287, 374,23 A. 186. That the English courts of equity had plenary jurisdiction over the persons of children there can be no question, and, in the absence of any statute, the Superior Court of this state, as successor to all the equitable powers vested in the high courts of England, would have a like jurisdiction. The reason why the Superior Court cannot, except in the cases where it has exercised the power from time immemorial (habeas corpus; Dunham v. Dunham, supra) or by specific grant (divorce, or separation under 5185; ibid.), determine the custody of children is that jurisdiction over that matter has in general been by statute vested in the Probate Court. In the case of an illegitimate child, the mother is the guardian of the person, but the Probate Court is given specific power to remove her and appoint someone else. General Statutes, 4794; Lewis v. Klingberg, 100 Conn. 201, 205, 123 A. 4. *Page 317 
The guardian of the person of a child is entitled to his custody. 39 C.J.S. 86. The Superior Court has no jurisdiction over matters which are specifically placed within the jurisdiction of the Probate Court. First National Bank Trust Co. v. McCoy,124 Conn. 111, 115, 198 A. 183. It follows that the trial court was right in refusing to take jurisdiction of the prayer for custody of Michael and in refusing to interfere with the petition for adoption apparently filed in accordance with the provisions of chapter 251 of the 1943 Supplement to the General Statutes. This conclusion is not to be taken as tacit approval of the action of former counsel for the plaintiff in filing the petition in the Probate Court of which he is judge without notice to the defendant. The matter is not before this court.
The judgment awarded the defendant lump sum alimony of $18,000 and further ordered the plaintiff to deliver the $18,000 life insurance policy to her and to pay her the amount of the premiums. The defendant claims that on the facts she is entitled to periodic payments in substantial amount as a matter of law, and possibly to a principal payment. It is true that the primary basis for an award of alimony is to provide that support for the wife which the husband, by entering into the marriage, agreed to furnish. Cary v. Cary, 112 Conn. 256,260, 152 A. 302; Christiano v. Christiano, 131 Conn. 589,593, 41 A.2d 779. This fact probably underlies the preference generally expressed for periodic rather than lump sum payments. Schouler, Divorce Manual, 260. General Statutes, Rev. 1902, 4556, limited an award of alimony to one-third of the husband's estate, but it was amended, and General Statutes, Rev. 1930, 5182, is very broad. It provides: "The superior court may assign to any woman *Page 318 
divorced by such court a part of the estate of her husband and, in addition thereto or in lieu thereof, may order alimony to be paid from the husband's income. . . . whenever an order shall be made for the payment, at stated periods, of alimony from the income of the husband, the court may, at the time of issuing such order, fix a definite amount which may, at any time, be paid by the husband in lieu of all periodical payments which would otherwise accrue after the payment of such amount." It has been uniformly interpreted as giving the court a wide discretion. Felt on v. Felt on, 123 Conn. 564,567, 196 A. 791, and cases cited; see Keezer, Marriage Divorce (3d Ed.) p. 632. An abuse of judicial discretion will be reviewed on appeal in this as in other cases, but trial courts have a distinct advantage over an appellate court in dealing with domestic relations, where all of the surrounding circumstances and the appearance and attitude of the parties are so significant. It is not surprising, therefore, that no Connecticut case has been found in which that discretion has been held to have been abused. For example, Nelson cites sixteen cases in which appellate courts refused to interfere and only one where the award was held inadequate. 2 Nelson, Divorce Annulment (2d Ed.) 14.50. In most of the cases cited to the point in 27 C.J.S. 977, note 5, only a small fraction of the husband's estate had been awarded the wife, instead of nearly half as in this case. On the cold record, an award of periodic alimony would seem preferable in this case. The defendant, however, appears to have received from the plaintiff personal property of the approximate value of $60,000, and an allowance out of income would terminate upon the disability or death of the plaintiff. In view of these facts and the *Page 319 
situation of the parties, we cannot say that there was an abuse of discretion. It is to be noted that the statute specifically authorizes lump sum alimony. The appeal from the orders for alimony pendente lite and counsel fees must be disposed of on the same basis, that the awards made were fairly within the discretion of the trial court. Schilcher v. Schilcher,124 Conn. 445, 448, 200 A. 351.
 There is no error.
In this opinion ELLS and DICKERSON, Js., concurred.