O. PENDLETON THOMAS *v*. ALICE A. THOMAS

ALCORN, C. J., HOUSE, THIM, RYAN and SHAPIRO, Js.

Argued May 6—decided June 9, 1970

*John F. Lambert,* with whom were *Frederick J. Coyer* and *Richard F. Comerford, Jr.,* for the appellant (defendant).

*Bernard S. Peck,* with whom were *Arthur E. Balbirer* and, on the brief, *David Goldstein,* for the appellee (plaintiff).

THIM, J. The plaintiff and the defendant were married in Galveston, Texas, in 1939 and have two minor children of their marriage. Moving frequently, they resided in various parts of the country until 1955, when they settled in Greenwich. In 1967 the parties ceased living together as man and wife, and they separated completely in February, 1968. The husband commenced an action for divorce in September, 1968, and the wife filed a counterclaim and cross complaint seeking a legal separation, alimony, custody and support of minor children, and counsel fees. On June 20, 1969, the court found for the wife and granted her a legal separation, together with the other relief requested. On June 23, 1969, three days after the judgment, the husband petitioned the court for a decree finally dissolving and terminating the marriage pursuant to General Statutes § 46-30. On June 25 the wife appealed to this court from the judgment rendered on June 20 and moved to erase the husband's petition for a decree dissolving the marriage. On July 9 the court rendered a judgment dissolving and terminating the marriage but affirming all other orders contained in its earlier judgment of June 20. The wife also appealed from the July 9 judgment, and the parties have treated both appeals as one case.

The only error specifically assigned relative to the July 9 judgment asserts that the court erred in granting the petition to dissolve and terminate the marriage while the judgment of legal separation was on appeal to this court. General Statutes § 46-30 permits the Superior Court to enter a decree dis-

solving and terminating a marriage upon petition of either party at any time after the entry of a decree of legal separation. The relief provided in § 46-30 is essentially equitable in nature and may be granted or denied in the discretion of the trial court. *Lee v. Lee,* 145 Conn. 355, 360, 143 A.2d 154. The only restriction upon the court's power to grant this relief which is expressed in the statute is that the court find that the parties have not resumed marital relations since the rendition of the decree of legal separation. *Satter* v. *Satter,* 153 Conn. 230, 231, 215 A.2d 415. Thus it would appear from the terms of the statute that the court had the power to grant the husband's petition in this case, in the exercise of its sound discretion, even though only three days had passed since the separation decree.

Judicial discretion, however, is always a legal discretion, exercised according to the recognized principles of equity. *Hammerberg* v. *Leinert,* 132 Conn. 596, 604, 46 A.2d 420. While its abuse will not ordinarily be interfered with on appeal to this court, reversal is required where the abuse is manifest or where injustice appears to have been done. *Grievance Committee* v. *Nevas,* 139 Conn. 660, 666, 96 A.2d 802. Where either an appeal has been filed from a decree of separation or the time for taking such an appeal has not yet passed, it is a manifest abuse of a court's discretion to dissolve and terminate a marriage under § 46-30 until the outcome of the appeal, if any, is known, or until the time for taking an appeal has passed and none has been filed. The taking of an appeal from a separation decree stays enforcement of rights derived from that judgment by the litigants, and it is an abuse of discretion for a court to render a decree under § 46-30 until the validity of that judgment of legal separation has

been finally determined. See General Statutes § 52-264; Practice Book § 661; *Saunders* v. *Saunders,* 140 Conn. 140, 145, 146, 98 A.2d 815; *Palmer* v. *Des Reis,* 135 Conn. 388, 390, 64 A.2d 537; *Walsh* v. *Laffen,* 131 Conn. 358, 360, 40 A.2d 689.

An appeal from a divorce decree or from a decree of legal separation should forestall "further proceedings in connection therewith until the return of the mandate or termination of the appellate proceeding by withdrawal or dismissal. . . . The decree remains binding upon the parties and in force throughout the pendency of the appeal subject only to the possibility of an ultimate appellate reversal." 4 Am. Jur. 2d, Appeal and Error, § 377. Thus the right of the parties after a decree of legal separation to have a petition filed pursuant to § 46-30 passed upon by the Superior Court is suspended in the same manner as any other right arising from the decree while the appeal is pending, and it would be a manifest abuse of discretion for a court at such a time to enter a decree dissolving and terminating the marriage. It was error, therefore, for the court in the instant case to render the July 9 judgment while an appeal was pending in this court from the June 20 judgment.

We now turn to the wife's claim that the court's award of alimony and property from her husband's estate was inadequate. The following facts are of assistance in considering this claim. The court found that at the time of their marriage neither party had any assets. Immediately after World War II, the husband became employed by Sinclair Oil Corporation and was elected assistant comptroller in 1954. Ten years later he became president of Sinclair, which merged with Atlantic Richfield Company in 1969. He is currently chairman of the

executive committee of the merged corporations, which is the third-highest executive office. We see no need to go into great detail as to the husband's assets at the time of the award, except to state that they were substantial and commensurate with his position. His assets amounted to approximately $1.5 million and consisted primarily of Atlantic Richfield Company stock. He was receiving an annual salary of $175,000 in his position as chairman of the executive committee. His liabilities were also substantial, consisting principally of a debt of $342,000 owing to a New York bank and evidenced by demand notes. It further should be pointed out that the husband had no written or oral contract, agreement or understanding with Atlantic Richfield as to either his salary or his tenure of employment.

At the time of the award the wife had no income. She owned jointly with her husband a home in Greenwich, an unimproved tract of land also located in Greenwich, and an interest as joint tenant with right of survivorship in $8755 worth of stock. In her own name she owned an automobile, a checking account with a balance of $2672, and a $30,000 insurance policy on the life of her husband with a cash surrender value of $1000.

The court awarded the wife $3000 a month alimony and $150 a month child support for each minor child and ordered the husband to pay medical, dental, surgical, nursing and college expenses for each minor child until majority. The court further ordered the husband to quitclaim to his wife his interest in their home, including all fixtures, furniture and other personal property found therein. The home was completely paid for and valued at $60,000. The husband was directed to change his group life insurance policy to include his wife as an irrevocable

beneficiary in the amount of $150,000, and to keep the policy in force and effect so long as he is employed by Atlantic Richfield. He was ordered to pay $15,000 for his wife's counsel fees. In addition, he was directed to deliver to her $130,000 worth of stock from his estate as a further settlement, from which she would also derive an income of $4480 per year, raising her annual income as a result of the judgment to over $40,000.

Despite her substantial award, the wife contends that the court abused its discretion because it did not give her a greater share of her husband's salary and estate. "An abuse of judicial discretion will be reviewed on appeal in this as in other cases, but trial courts have a distinct advantage over an appellate court in dealing with domestic relations, where all of the surrounding circumstances and the appearance and attitude of the parties are so significant." *LaBella* v. *LaBella,* 134 Conn. 312, 318, 57 A.2d 627. The statute authorizing an award of alimony is very broad and gives the court a wide discretion. General Statutes § 46-21; *Elmore* v. *Elmore,* 138 Conn. 408, 410, 85 A.2d 491. Alimony is based upon the continuing duty of a divorced husband to support an abandoned wife and should be sufficient to provide her with the kind of living which she might have enjoyed but for the breach of the marriage contract by the defendant. *Shrager* v. *Shrager,* 144 Conn. 483, 487, 134 A.2d 69. Only one Connecticut case can be found in which the court's discretion in setting alimony was held to have been abused, and in that case the trial court had refused to increase an award of $260 annually when the husband was earning over $10,000 per year. *Shrager* v. *Shrager,* supra; see *Elmore* v. *Elmore,* supra; *LaBella* v. *LaBella,* supra. We cannot say that the

484

court's award in the instant case was inadequate as a matter of law under the parties' present circumstances.

The wife next claims that the court should not have found that the husband would incur a federal capital gains tax on any stock transferred to her as alimony. She is not making the claim that the tax, if applicable, was an improper subject for the court's consideration in determining the husband's assets and financial ability to transfer a substantial amount of stock to her. Rather, her only claim as we see it is that the court erroneously concluded that the transfer would be taxable.

The controlling case on this issue is *United States v. Davis,* 370 U.S. 65, 82 S. Ct. 1190, 8 L. Ed. 2d 335. The *Davis* case involved a voluntary property settlement which was incorporated into a divorce decree. Pursuant to the agreement, the taxpayer transferred to his wife 1000 shares of stock in E. I. du Pont de Nemours and Company. The court held that the controlling language in §§ 1001 and 1002 of the Internal Revenue Code of 1954, providing that gains from dealings in property are to be taxed upon "sale or other disposition", was inconclusive. It therefore turned to Delaware law to determine the nature of the transfer and found that "Delaware seems only to place a burden on the husband's property rather than to make the wife part owner thereof. . . . The effectuation of these marital rights may ultimately result in the ownership of some of the husband's property as it did here, but certainly this happenstance does not equate the transaction with a division of property among co-owners." Id., 70. The court's holding that the transfer was subject to a long-term capital gains tax was based on its finding that in Delaware the wife has no interest

approaching that of coownership in her husband's property and that her share in his estate is based on a liability of the husband rather than on a property right of the wife. Ibid.

In *Pulliam* v. *Commissioner,* 329 F.2d 97 (10th Cir.), the *Davis* rule favoring taxability where there was no coownership of the property transferred was extended to cover awards made by a court without agreement of the parties. The court held that nothing in the *Davis* decision indicated that particular weight was given to the fact that a voluntary settlement had been made.

*Davis* was followed again in a series of cases involving an Oklahoma divorce. Noting that Oklahoma was not a community property state, the court in *Collins* v. *Commissioner,* 388 F.2d 353, 355 (10th Cir.), construed its law as giving a wife no interest in her husband's property sufficient to avoid the imposition of a capital gains tax on a property transfer made pursuant to a divorce. But in a case involving the same parties, the Supreme Court of Oklahoma held that there was no liability for a state capital gains tax on the same transfer, and interpreted Oklahoma law as holding that "[t]he nature of the wife's interest is similar in conception to community property of community property states, and is regarded as held by a species of common ownership." *Collins* v. *Oklahoma Tax Commission,* 446 P.2d 290, 295 (Okla.). On the basis of this state decision, the United States Supreme Court, in *Collins* v. *Commissioner,* 393 U.S. 215, 89 S. Ct. 388, 21 L. Ed. 2d 355, vacated the earlier judgment of the Court of Appeals and remanded the case for further consideration. Looking to the law of the state, as required by *Davis,* the Court of Appeals concluded, on reconsideration, that there was no tax liability, since "the

stock transfer operated merely to finalize the extent of the wife's vested interest in property she and her husband held under 'a species of common ownership' ". *Collins* v. *Commissioner,* 412 F.2d 211, 212 (10th Cir.). The rule in *Davis* is also followed by the Tax Court of the United States. See *Swaim* v. *Commissioner,* 50 T.C. 302, aff'd, 417 F.2d 353 (6th Cir.); *Stephens* v. *Commissioner,* 38 T.C. 345.

As evidenced by the authorities cited above, the law seems clear: a federal capital gains tax will be incurred on a transfer of property made between a husband and a wife pursuant to a divorce or legal separation unless local law holds that the wife had a vested interest in the property transferred similar to coownership, as in a community property state. No such vested interest in the wife is recognized in Connecticut. Our law on the issue is quite similar to that of Delaware as discussed in the *Davis* case. Our alimony statute does not recognize any absolute right to alimony. General Statutes § 46-21; *Bielan* v. *Bielan,* 135 Conn. 163, 168, 62 A.2d 664. By statute, neither husband nor wife acquires any right in the property of the other, except for certain survivorship rights provided in § 46-12, whether such property is acquired before or after the marriage. General Statutes § 46-9. In *Christiano* v. *Christiano,* 131 Conn. 589, 593, 594, 41 A.2d 779, we reviewed the law in this state with regard to alimony and concluded that it was an allowance from the husband's estate for the support to which his wife was entitled and of which she had been wrongfully deprived through the husband's default of the marriage contract. See also *Shrager* v. *Shrager,* 144 Conn. 483, 487, 134 A.2d 69; *LaBella* v. *LaBella,* 134 Conn. 312, 317, 57 A.2d 627. We further concluded in *Christiano* v. *Christiano,* supra, that alimony does

not establish the existence of an antecedent liability and is not a debt in the legal sense of the word but rather is a liability arising from the change of status of the parties based on the continuing common-law obligation of the husband to support his wife, whom he has in legal effect abandoned. Thus, under both our common law and by statute, a wife's share in her husband's estate pursuant to an award in the case of a divorce or legal separation is based upon a liability of the husband and not upon any property right of the wife such as coownership. We conclude, therefore, that the court below was correct in finding that the transfer of stock in question would incur a federal capital gains tax liability.

The existence of capital losses and capital loss carry-overs which might reduce the amount of the liability in question is irrelevant to our considerations, since there is no evidence of such losses and, in any event, the amount of liability was not found and is not an issue before us. Likewise, the claims of error addressed to the finding as to which shares of stock were subject to a three-year holding period, and as to the exact basis for each block, are only relevant to the amount of liability, which is not at issue.

The only other assignment of error as to the finding which is pursued in the wife's brief and which is not discussed elsewhere in this opinion relates to the question of which party was responsible for the separate sleeping arrangements that began in 1967. Since this alleged error in the finding has no bearing on any of the matters which are before us, it need not be discussed.

The final claim of the wife is that the court erred in refusing to grant her counsel fees to prosecute the appeal. After the June 20 judgment decreeing a

legal separation, the wife moved for counsel fees to appeal to this court. No such motion was made in conjunction with her appeal from the July 9 judgment dissolving the marriage, but the parties and the court appear to have treated the motion that was made as covering both appeals, and we see no reason not to consider it as having the same effect. This seems fair in the light of the manner in which these appeals were treated as one case, with one finding, and with one docket number in both this court and in the Superior Court.

The record does not disclose with certainty what disposition was made of the motion in question, although the court's figure of $15,000 for counsel fees, set before the appeal and the motion, was not changed. Both parties admit that the wife's request for further fees was denied at a hearing held on July 9, 1969. The wife attempted to have the court's reason for denying her motion for fees for the appeal set forth in the finding, and assigned error in the court's failure to do so. We think that it was the court's duty to state in the finding its conclusion as to the motion and its reasons for so holding. "It is to be remembered that a finding should be so made as to present to the court all questions which the appellant desires to have reviewed, and consequently if he questions the propriety of the court drawing a particular inference, it should appear that the court has done so, with a statement of the facts on which the inference is based." Maltbie, Conn. App. Proc., p. 174 § 140.

From an examination of the material which is printed in the appendix to the wife's brief and is not contested by the husband, it appears that the court denied the motion for separate and additional counsel fees on the ground that the wife would

only be entitled to them should she prevail on her appeal. Aside from the refusal of the court to set forth and explain in the finding the action it took on the motion in question, it was error for the court to deny further fees to the wife until it became known whether she would prevail on appeal. "The test for the trier to apply upon an application for an allowance to prosecute an appeal in a divorce action is whether the wife is justified in taking the appeal and whether the resources of the parties are such as to require the husband to finance it. *Bielan* v. *Bielan,* 135 Conn. 163, 170, 62 A.2d 664; *Schilcher* v. *Schilcher,* 124 Conn. 445, 448, 200 A. 351." *Saunders* v. *Saunders,* 140 Conn. 140, 145, 98 A.2d 815. What the court appears to have done in the instant case was to delay action on the motion for further fees until it was able to use the determination of the appeal by this court as its guideline in deciding whether the wife was justified in taking the appeal. It should have made its determination of merit prior to our decision and based on its own conclusions. There is, accordingly, error in the judgment of separation rendered on June 20, 1969, and on the appeal from that judgment the case must be remanded for further proceedings so that an independent determination of merit and ability of the parties to pay may be made. We would caution the court that our determination of this appeal is not to be conclusive as to the merit of taking it.

There is error, the judgments of June 20, 1969, and July 9, 1969, are set aside and the case is remanded for further proceedings in accordance with this opinion.

In this opinion the other judges concurred.