NEDRA C. BAKER *v.* CARLETON B. BAKER

HOUSE, C. J., SHAPIRO, LOISELLE, MACDONALD and BOGDANSKI, Js.

Argued May 8—decision released June 25, 1974

*Wesley W. Horton,* with whom, on the brief, was *William R. Moller,* for the appellant (defendant).

*Paul W. Orth,* for the appellee (plaintiff).

MacDonald, J. By complaint dated July 23, 1970, the plaintiff, Nedra C. Baker, sought a legal separation from her husband, the defendant, Carleton B. Baker, on the ground of intolerable cruelty. By an amendment to her complaint dated August 17, 1971, the plaintiff altered her prayer for relief insofar as

it sought a legal separation, substituting therefor a prayer for a divorce. The defendant contested the action and, by way of a special defense, asserted that the court was without jurisdiction to decide the matter in that neither party was domiciled in Connecticut. The matter was referred to Hon. Raymond E. Baldwin, a state referee, who, acting as the court, denied the defendant's motion to dismiss for lack of jurisdiction, granted the plaintiff a divorce and ordered lump sum alimony in the amount of $239,746 and a conveyance to the plaintiff of the defendant's half interest in certain property in Maine. The defendant has appealed from that judgment and also has appealed from a contempt judgment rendered against him in June, 1973, for failure to make support payments to the plaintiff during the pendency of the appeal as ordered by the referee.

The defendant has made one of those wholesale attacks upon the finding which this court repeatedly has criticized and, apparently in vain, has attempted. to discourage.[1] *Southern New England Contracting Co.* v. *State,* 165 Conn. 644, 646, 345 A.2d 550; *Pawlinski* v. *Allstate Ins. Co.,* 165 Conn. 1, 3, 327 A.2d 583. He has assigned as error the refusal of the referee to find the facts set forth in ten paragraphs of his draft finding, the inclusion in the finding of thirty-eight paragraphs claimed to have been found without evidence and the inclusion of six paragraphs apparently alleged to have been found in language of doubtful meaning. He also

---

[1] The defendant, in his brief, prefaces this "shotgun attack" on the finding with an "argument" which comes perilously close to being an attack on the integrity and impartiality of the referee sitting as a court in preparing the finding. While we refrain from concluding that such was the implication intended to be drawn from the innuendoes contained therein, we do not hesitate to express our disfavor of the contents of this purported "argument."

assigned error in the reaching of twelve conclusions claimed to be unsupported by the subordinate facts, the overruling of seven claims of law and a ruling on evidence. The defendant, however, to some extent has simplified and clarified the basis of his appeal by abandoning some of his claims and by focusing primarily upon the following three issues: (1) whether the court had jurisdiction to grant the divorce; (2) the amount of the alimony award; and (3) the propriety of the contempt judgment.

The finding, which is not subject to material correction,[2] reveals the following relevant facts:

[2] The defendant concedes in his brief that the finding "in large part complies technically with the Practice Book." He nonetheless proceeds to attack large portions of that finding. Several of these claims were not briefed and are considered abandoned. *State* v. *Brown*, 163 Conn. 52, 55, 301 A.2d 547; *Holt-Lock, Inc.* v. *Zoning & Planning Commission*, 161 Conn. 182, 184, 286 A.2d 299.

Insofar as the defendant's requested additions to the finding are concerned, either they are not admitted or undisputed or they are implicit in the finding, immaterial, or would not directly affect the ultimate facts upon which the judgment depends, so that no additions are warranted. *Salvatore* v. *Milicki*, 163 Conn. 275, 277, 303 A.2d 734. To secure an addition to the finding the defendant must point to some part of the appendix, the pleadings or an exhibit properly before us which discloses that the plaintiff admitted the truth of the fact or that its validity was conceded to be undisputed. *Randolph Construction Co.* v. *Kings East Corporation*, 165 Conn. 269, 271 n.1, 334 A.2d 464; *Stoner* v. *Stoner*, 163 Conn. 345, 347, 307 A.2d 146. A fact is not admitted or undisputed merely because it has not been contradicted. Practice Book § 628 (a); *Malarney* v. *Peterson*, 159 Conn. 342, 344, 269 A.2d 274.

A review of the remaining claims, that facts were found without evidence or in language of doubtful meaning, indicates that they amount " 'to nothing more than a request that we accept . . . [his] version of the facts. . . .' *Broderick* v. *Shea*, . . . [143 Conn. 590, 592, 124 A.2d 229]." *Salvatore* v. *Milicki*, 163 Conn. 275, 278, 303 A.2d 734. This is particularly true with regard to those paragraphs challenged as being in language of doubtful meaning. "Such correction will rarely be made and never for the mere purpose of substituting language of counsel for that of the court." Practice Book § 628 (b).

The plaintiff came to Connecticut from Maine in 1944 and in 1946 went to work for the defendant at the Simsbury Airport, which the defendant then owned. She was the only employee in the office, where she did bookkeeping and general clerical work. The plaintiff and the defendant worked long hours, including many weekends and evenings, and by the mid-1950s they had brought the airport from financial uncertainty to solidity. In March, 1957, just prior to their marriage, the defendant bought in his own name a residence on Willard Street in Simsbury, where the parties lived after the marriage. In 1962 they bought in their joint names a summer home on Chebeague Island in Maine where they spent long weekends. After their marriage the airport increased in size, activity and financial worth, a success to which the plaintiff's efforts contributed substantially. The defendant also acquired most of his other assets, including stocks, bonds and bank accounts, after the marriage. For her efforts at the airport the plaintiff was paid a weekly salary, which at the time of the separation in June, 1970, was $125. She used this money to buy clothing for herself and the defendant, food, and furnishings for the house in Simsbury, which she decorated largely from her own earnings.

In the summer of 1969 the parties spent a considerable amount of time socializing with Mr. and Mrs. Norman Ross, who also vacationed on Chebeague Island. The defendant became enamored of Mrs. Ross, and, in the fall and winter of 1969–70 and the spring of 1970, they were often together, surreptitiously, in motels and elsewhere. In July, 1970, Mrs. Ross left her husband and children and later began to live secretly with the defendant.

The defendant sold his airport business in May, 1970, for $450,000, accepting $100,000 in cash and a $350,000 mortgage payable in five annual instalments of $70,000 each. The plaintiff worked temporarily for the new owner of the Simsbury Airport from May to early July, 1970, in order to set up the records and break in a new girl for the office work. Upon leaving this work, the plaintiff told the new owner that she intended to come back from her summer home in Maine and would contact him and return to work. On or about July 10, 1970, she went to Maine, intending to come back to Connecticut after some vacation. She had neither husband nor job in Simsbury to return to during the summer, so she stayed on the Maine island all summer. She did not intend to make her domicil in Maine, but only to spend a portion of the summer there after the defendant left her. In October, 1970, she returned to the Simsbury residence for a day or so and went there again in December, 1970, for about a week, hoping that a reconciliation might be possible. In May, 1971, she spent about two weeks in the Simsbury house with her sister, and spent about a week there again in October, 1971, March, 1972, and May, 1972. Most of the rest of the time she stayed with and took care of her mother, who was not well, at the mother's home in Westbrook, Maine. Although the plaintiff did not like to live alone in the house in Simsbury because of certain needed repairs and water conditions on the premises, she did consider it her residence. Prior to the defendant's sale of the home in July, 1972, the plaintiff was there, packed up her things and had her furniture moved from there into storage in Hartford to await her final decision as to where to locate, knowing that the defendant intended to sell the house.

For some years prior to bringing this action, and until the time of trial, the plaintiff had her car registered in Connecticut, maintained bank accounts in Simsbury and was a registered voter and actually voted there. Most of her friends are in the Simsbury area and she is still considering returning there, depending on her mother's health. Until the divorce was granted, the plaintiff intended to remain in Connecticut. She was domiciled in Connecticut and had been for more than the statutory period at the time this action was begun and at no time prior to its institution had she abandoned her Connecticut domicil.

In August, 1970, the defendant still had business affairs at the Simsbury Airport. He had four accounts in Connecticut banks which were garnished on July 24, 1970. Furthermore, the deed from and mortgage to him regarding the airport sale had not yet been recorded, so the plaintiff attached this real estate on July 24, 1970. The defendant found the writ, summons and complaint at the Simsbury premises a few days after the sheriff made abode service on July 28, 1970, and gave the papers to his attorney, who entered a general appearance.

In late August or early September, 1970, the defendant instituted a divorce action in Maine against the plaintiff and she obtained counsel in Maine. After a hearing on November 17, 1970, the Maine action was dismissed for lack of jurisdiction, neither party having the requisite Maine residency, and the Maine court awarded the plaintiff $250 in attorney's fees. Prior to this hearing, the defendant sent mail to the plaintiff at the Simsbury house. Shortly after the hearing, the plaintiff's Maine attorneys rendered her a bill for services, some of

which were of assistance to her Connecticut counsel. This bill was paid partly by the plaintiff, partly by the defendant, and partly by the plaintiff's Connecticut attorneys. The plaintiff's Maine attorneys continued to render assistance to her Connecticut attorneys, at their request, and submitted bills totaling $3081.13 for such services, which remain unpaid because of the plaintiff's lack of funds. These bills were reasonable and necessary in connection with the plaintiff's Connecticut action.

It was at the defendant's request or insistence that the plaintiff amended her prayer for relief in this action from a legal separation to a divorce. The defendant did not file the financial affidavit required by § 380 of the Practice Book at any time, nor did he testify fully under oath as to his total estate. He did not answer the plaintiff's lengthy disclosure motion concerning his finances and was found in contempt for failure so to comply. The defendant thus forced the plaintiff to prove his assets as best she could. In addition to the above facts, the referee also made numerous findings relating to the financial status of the parties which, for the sake of brevity, will not be reproduced herein.

From the foregoing the referee concluded that the plaintiff was a resident of Connecticut at the time of the commencement of her divorce action; that she did not abandon her Connecticut domicil at any time prior to the hearing; that all amendments to her complaint were proper, related back to the date of the original complaint and were within the discretion of the court to grant; that the defendant also was a resident of Connecticut, at least until August, 1970, after he had received the divorce papers; and that the court had jurisdiction over the

divorce action and the power to make all orders incident to a divorce. It was also concluded that the allegations of the complaint had been proved, that the plaintiff should be granted a divorce, and that the defendant should pay for the services of the plaintiff's Maine counsel and $239,746 in lump sum alimony and should convey to the plaintiff his one-half interest in the property on Chebeague Island. The defendant has assigned error in all of these conclusions.

The referee's conclusions are tested by the finding; *State* v. *Villafane,* 164 Conn. 637, 638, 325 A.2d 251; *Brauer* v. *Freccia,* 159 Conn. 289, 293, 268 A.2d 645; and they must stand unless they are legally or logically inconsistent with the facts found or unless they involve the application of some erroneous rule of law material to the case. *Connecticut Bank & Trust Co.* v. *Bovey,* 162 Conn. 201, 205–6, 292 A.2d 899; *Johnston Jewels, Ltd.* v. *Leonard,* 156 Conn. 75, 79, 239 A.2d 500.

The primary claim of the defendant is that the court lacked jurisdiction to grant a divorce to the plaintiff. In support of this proposition he advances three arguments: first, that since, at the institution of this action, there was abode service only, the plaintiff was required to prove that the defendant was domiciled in Connecticut at the commencement of the action, which, according to the defendant, she did not do; second, that whether or not there was an adequate jurisdictional basis at the institution of the action, the plaintiff's amendment to her prayer for relief constituted a new cause of action requiring a new jurisdictional determination, and neither party was domiciled in Connecticut at the time of the amendment; and, finally, that one of the

parties must be domiciled in this state at the time of trial and at the time the decree is entered. We find no merit to these claims.

Insofar as the defendant's first argument is concerned, § 46-15 of the General Statutes,[3] in effect at the time of this action, controlled the residence requirement for jurisdiction over an action for either a divorce or a legal separation. See § 46-29.[4] Section 46-15, in the clearest possible terms, established the date of the complaint as the determinative date for jurisdictional purposes and merely required continuous residency by the plaintiff for one year next before that date as a basis for jurisdiction. The facts found by the referee clearly support his conclusion that the plaintiff had been domiciled in Connecticut for more than the required statutory period at the commencement of this action. Moreover, the defendant clearly waived any defects of jurisdiction at that point by filing a general appearance. *Beards-*

---

[3] "[General Statutes] Sec. 46-15. RESIDENCE NECESSARY FOR JURISDICTION. If the plaintiff has not continuously resided in this state one year next before the date of the complaint, it shall be dismissed unless the cause of divorce has arisen subsequently to the removal into this state, or unless the defendant has continuously resided in this state one year next before the date of the complaint and actual service has been made upon him, or unless the plaintiff was domiciled in this state at the time of the marriage and before instituting the complaint returned to this state with the intention of permanently remaining. For the purpose of this section, any plaintiff who has served or is serving with the armed forces, as defined by section 27-103, or the merchant marine, and who was a resident of this state at the time of his entry shall be deemed to have continuously resided in this state during the time he has served or is serving with said armed forces or merchant marine."

This section has since been repealed by Public Acts 1973, No. 73-373, § 43.

[4] Section 46-29 also was repealed by Public Acts 1973, No. 73-373, § 43.

*ley* v. *Beardsley,* 144 Conn. 725, 729, 137 A.2d 752; *Amato* v. *Campano,* 141 Conn. 247, 250, 105 A.2d 185; *Fine* v. *Wencke,* 117 Conn. 683, 684, 169 A. 58.

The defendant's second jurisdictional argument, that the amendment to the prayer for relief constituted a new cause of action and thus established a new jurisdictional date, also appears to us to be without merit. It is well settled that amendments, unless they allege a new cause of action, relate back to the date of the complaint. *Kelsall* v. *Kelsall,* 139 Conn. 163, 165, 90 A.2d 878; *Motiejaitis* v. *Johnson,* 117 Conn. 631, 638, 169 A. 606; *Onofrio* v. *Cirusuolo,* 109 Conn. 521, 524, 147 A. 36; *Reilly* v. *Antonio Pepe Co.,* 108 Conn. 436, 445, 143 A. 568; *World Fire & Marine Ins. Co.* v. *Alliance Sandblasting Co.,* 105 Conn. 640, 644, 136 A. 681; *LaBarre* v. *Waterbury,* 69 Conn. 554, 556, 37 A. 1068. While the plaintiff argues, with some justification, that the defendant should be estopped from asserting this claim in that it was at his request or insistence that the prayer for relief was amended so as to ask for a divorce rather than a legal separation, in light of the view we take of this claim it is unnecessary to decide that issue. The amendment, altering as it did only the prayer for relief, clearly did not change the factual bases or series of transactions upon which the complaint was based. Moreover, an examination of § 46-29, which then governed legal separation,[5]

---

[5] "[General Statutes] Sec. 46-29. LEGAL SEPARATION. In any case in which a divorce might be decreed, the superior court, on petition of the party who would be entitled to a divorce, may decree a legal separation of the parties, which separation shall have in all respects the effects of a divorce, except that the parties shall not thereby be made free to marry any third person and except as hereinafter provided. Upon such petition the procedure shall be the same as in actions for divorce, and the court shall have the same power in all

reveals that it was inextricably intertwined with the statutes governing divorces, referring repeatedly to divorce in terms of jurisdiction, grounds, effect and orders for alimony, custody, support and allowances. The statutes governing legal separations "were intended to, and do, supplement the statutes governing divorces." *Lee* v. *Lee,* 145 Conn. 355, 359, 143 A.2d 154. "The presumption is that the legislature, in adopting an act, does so in view of existing relevant enactments and with the intention that the act be read with them so as to make one consistent body of law." *Wilson* v. *West Haven,* 142 Conn. 646, 654, 116 A.2d 420. Thus, we are dealing with what, for all practical purposes, amounts to one statutory and factual action and not two disparate causes of action. See *Grady* v. *Kennedy,* 145 Conn. 579, 585, 145 A.2d 124; *Reilly* v. *Antonio Pepe Co.,* supra, 444; *Moran* v. *Bentley,* 71 Conn. 623, 629, 42 A. 1013; *Howland* v. *Couch,* 43 Conn. 47, 52. Consequently, the amendment related back to the date of the complaint and that is the date determinative of the court's jurisdiction.

The defendant, in his final attack on the court's jurisdiction, maintains that *Litvaitis* v. *Litvaitis,* 162 Conn. 540, 546, 295 A.2d 519, requires that one of the parties be domiciled in the state at the time of trial and at the time the decree is entered. *Litvaitis* concerned the recognition by this state of a foreign divorce, in that case one obtained in

---

matters relating to temporary and permanent orders for alimony, custody and support of children, and to allowances, as in cases of divorce. The parties to such action may at any time resume marital relations, upon filing with the clerk of the superior court for the county in which the separation was decreed their written declaration of such resumption, signed, acknowledged and witnessed. Such declaration shall be entered upon the docket, under the entries relating to such petition."

Mexico, with all the well-known difficulties attendant thereto, and it has nothing whatever to do with this case. As previously noted, § 46-15 established the date of the complaint as the date when jurisdiction is to be determined and the court had jurisdiction at that time. We see nothing in the statutes pertaining to divorce that would support the defendant's novel assertion. In the absence of an express statutory provision to the contrary, it is well settled that if the plaintiff in a suit for a divorce satisfies the residency requirements at the time of commencing proceedings, the court's jurisdiction will survive the plaintiff's change of domicil. 24 Am. Jur. 2d, Divorce and Separation, § 256; note, 7 A.L.R.2d 1414–17; cf. note, 89 A.L.R. 1203.

The defendant next challenges the referee's award of alimony. "The primary basis for an award of alimony is the continuing duty of a divorced husband to support a wife whom, in legal contemplation, he has abandoned. *Stoner* v. *Stoner,* 163 Conn. 345, 354, 307 A.2d 146; *Shrager* v. *Shrager,* 144 Conn. 483, 487, 134 A.2d 69; *Cary* v. *Cary,* 112 Conn. 256, 260, 152 A. 302; *Wright* v. *Wright,* 93 Conn. 296, 300, 105 A. 684. The amount of alimony awarded under a decree of divorce is within the sound discretion of the trial court, taking into account the circumstances of the case such as the amount of the estate of the husband, his income, his age, health and earning capacity and the age, health, station and separate estate of the wife. *Heard* v. *Heard,* 116 Conn. 632, 636, 166 A. 67; see also *Riccio* v. *Riccio,* 153 Conn. 317, 319, 216 A.2d 431; *Felton* v. *Felton,* 123 Conn. 564, 567, 196 A. 791." *Hotkowski* v. *Hotkowski,* 165 Conn. 167, 170, 328 A.2d 674. "An abuse of judicial discretion will be reviewed on appeal in this as in other cases, but trial courts

have a distinct advantage over an appellate court in dealing with domestic relations, where all of the surrounding circumstances and the appearance and attitude of the parties are so significant." *LaBella* v. *LaBella,* 134 Conn. 312, 318, 57 A.2d 627.

Although the defendant appears to have briefed only his claim that the value of the Maine attorneys' bills should not have been considered as a factor in determining the amount of the award, we have reviewed the finding and the award as a whole in light of these well-settled principles. As noted, the referee found that the defendant never filed the financial affidavit required by § 380 of the Practice Book nor did he testify fully as to his total estate. Moreover, he did not answer the plaintiff's disclosure motion concerning his finances. He thus left the plaintiff to prove his assets as best she could. Despite this burden, the evidence introduced by the plaintiff sufficiently supports the referee's finding that the defendant had assets of "at least" $733,595. "Where a defendant has by his wrongful conduct made the calculation of damages difficult, he will not be heard to urge such difficulty as a reason for not assessing by approximation." *Crowell* v. *Palmer,* 134 Conn. 502, 510, 58 A.2d 729. Additionally, the defendant did admit, at trial, to assets totaling $510,078. When the efforts of the wife in building up the value of the airport, an asset worth, in and of itself, $450,000, are considered, an award to her of less than half of the admitted assets can hardly be held to be an abuse of the referee's discretion.

The referee found that the bills of the plaintiff's Maine attorneys were for services which either were requested by the plaintiff's Connecticut attorneys or assisted them in the prosecution of this action. He

also found that these services were incidental to and reasonable and necessary in connection with the present action. Moreover, the referee did not consider the bills as specific items of definite amounts, but only as a matter to be considered in fixing the final amount of alimony. The allowance of counsel fees is a matter which calls for the exercise of judicial discretion; *Stoner* v. *Stoner,* supra; and the fact that the court takes into account out-of-state counsel fees, reasonably related to the action within this state, cannot be considered an abuse of that discretion.

The defendant, lastly, seeks to contest the contempt judgment rendered against him for failure to make support payments to the plaintiff during the pendency of this appeal. There is no assignment of error, however, directed toward this issue and we are not bound to consider any error not specifically assigned. Practice Book § 652; *Shakro* v. *Haddad,* 149 Conn. 160, 163, 177 A.2d 221; Maltbie, Conn. App. Proc. § 167.

There is no error.

In this opinion the other judges concurred.