JOHN R. AYERS *v.* SHIRLEY F. AYERS

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and BARBER, Js.

Argued December 8, 1976—decision released February 1, 1977

*Dwight O. Schweitzer,* for the appellant (plaintiff).

*Francis J. Foley III,* for the appellee (defendant).

HOUSE, C. J. The plaintiff brought this appeal from a judgment rendered on the defendant's cross complaint, dissolving, on the grounds of irretrievable breakdown, the marriage between the plaintiff, John R. Ayers, and the defendant, Shirley F. Ayers, and committing to the defendant, subject to the right of reasonable visitation in the plaintiff, the care, custody and education of the two of their children who were still minors. The plaintiff was ordered to pay the sum of thirty dollars per week

toward the support of each of the two minor children and was ordered to pay the sum of fifteen dollars per week as alimony. Also, the plaintiff's interest in the family home and land on route 97 in Abington was awarded to the defendant, who was ordered to save the plaintiff harmless from further payment on a mortgage on those premises and from taxes levied by the town of Pomfret accruing after April 1, 1975. In addition, the plaintiff was directed to pay to the defendant an allowance toward her counsel fees of $750 within ninety days of the date of judgment.

The trial referee, acting as the court, found the following pertinent facts: The plaintiff and the defendant intermarried on January 5, 1948, at Bel Air, Maryland. They lived together twenty-five years during which time they had eight children, two of whom were minors at the time of the hearing in 1975.

At the time of the hearing, the plaintiff was forty-eight years old and the defendant forty-four years old. The plaintiff is a mason and for the years 1973-76, was a mason foreman. His gross earnings for 1973 were $19,366.30 and, for 1974, $15,585.57. He was unemployed eleven weeks in 1974 and was laid off again in 1975. He is in good health, competent, skilled, and capable of earning approximately $15,000 per year.

The defendant worked as a waitress for seven years during the marriage and for four years at a yarn and carpet store to help pay off the mortgage on the family home. At the time of the hearing, she was working in a federally funded program, learning to be a licensed practical nurse; she received $74 weekly plus $5 per week for each of the

two minor children living with her and $6 per week for travel to the Day Kimball Hospital where she was training.

During the marriage, the parties had many violent quarrels. The plaintiff complained that the defendant was not a good disciplinarian of the eight children and that she was not a good housekeeper. The defendant objected to the very strict conduct and orders of the plaintiff toward the children.

In the fall of 1972, the plaintiff met a married woman in whom he developed a romantic interest and whom he continued to see frequently. The defendant endeavored to break up this relationship and to restore the marriage but met with no success. In September, 1973, the plaintiff notified the defendant he wanted a divorce and would give her "the house, the kids, the car, and the bonds; all he wanted to retain was his savings account of about $3000 and have his freedom." The plaintiff left the family home on September 5, 1973.

The plaintiff and the defendant were joint owners of the family residence on route 97 in Abington. It is an eight-room house with four bedrooms. It is an attractive house on two acres of land and there is a swimming pool installed for the pleasure of the children. It had a fair market value of $55,000 and was encumbered with a mortgage on which the balance was approximately $6400. The residence was the only home the children had ever had and the defendant continues to live there with the two minor children and a twenty-year-old daughter. The court found that the home is the best possible place for the defendant to live and care for the children.

After bringing this action on February 1, 1974, for dissolution of the marriage, and before the

defendant filed her cross complaint in June of 1974, the plaintiff took out a life insurance policy for $10,000 naming his woman friend as the beneficiary.

The court also found that the defendant had no offer of employment and might not have until licensed by the state after many months of training to become a practical nurse. Her earning capacity then will be much less than the plaintiff's. Despite the arguments between the parties over the children and housekeeping, it was the plaintiff who abandoned the home for another woman and sued for dissolution of the marriage. The court concluded that the defendant will need an award of moderate continuing alimony for the next few years.

The plaintiff filed three assignments of error. The first is that the court refused to find one paragraph of the plaintiff's draft finding to the effect that at the time of the hearing both parties "had been seeing a member of the opposite sex socially although only the husband was seeing another woman prior to the de facto separation." He asserts that these facts were admitted or undisputed. Not only is the relevance and materiality of such a finding doubtful in view of the court's unattacked findings concerning the conduct of the plaintiff prior to the separation, but the plaintiff has failed to support his assertion that the facts were admitted or undisputed. To secure an addition to the finding the plaintiff must point to some part of the appendix, the pleadings or an exhibit properly before us which discloses that the defendant admitted the truth of the fact or that its validity was conceded to be undisputed. *Baker* v. *Baker,* 166 Conn. 476, 479, 352 A.2d 277; *Stoner* v. *Stoner,* 163 Conn. 345, 347, 307 A.2d 146. A fact is not admitted or undisputed merely because it has not

been contradicted. Practice Book § 628. "It is for the trier to pass upon the credibility of witnesses and the weight to be accorded the evidence." *Edgewood Construction Co.* v. *West Haven Redevelopment Agency,* 170 Conn. 271, 272, 365 A.2d 819.

The plaintiff's second assignment of error is that the court failed to rule on eight claims of law contained in his draft finding. These claims all relate to the provisions of § 46-51 of the General Statutes which sets out the factors which a court is to consider in reaching a decision with respect to the assignment of property and transfer of title to be included in a decree dissolving a marriage. The claims of law are all to the effect that the court "should consider" those criteria and that in the light of those criteria it is "an abuse of discretion" for the court to render the decree which it did. We find no merit to this assignment of error. In its finding, the court expressly stated that "[t]he plaintiff claimed that the Court, in considering this matter, was bound to follow and consider the requirements of . . . [title] 46, General Statutes of Connecticut," that "[t]he Court assured counsel that it was familiar with . . . [title] 46, recognized that the Court was bound by its provisions and would carefully consider them," and that "[t]he Decision herein, the Judgment and the Finding above, all reflect the acceptance by the Court of plaintiff's claim." In view of the express statement of the court that it accepted the plaintiff's claims and that its decision reflected that acceptance, there is no justification whatsoever for the plaintiff's assertion that the court erred by failing to rule on those claims.

The remaining assignment of error attacks several conclusions of the court on the grounds that

the facts set forth in the finding do not support them. The attacked conclusions include findings that the marriage broke down irretrievably owing to the plaintiff's romantic involvement with another woman which began ten months before the separation of the parties, that the defendant is entitled to alimony, that the best interest of the minor children is served by their being in the custody of the defendant with reasonable rights of visitation in the plaintiff, that the defendant will need a moderate allowance of continuing alimony in addition to reasonable contributions toward the support of the children, that the right, title and interest of the plaintiff in the family home should be awarded to the defendant, and that the defendant is entitled to a reasonable allowance toward her counsel fees to defend the plaintiff's action.

We find no merit whatsoever in these claims of error. Each of the attacked conclusions is amply supported by the unattacked findings of fact. It is obvious that the court fully considered all of the many factors which, pursuant to the provisions of §§ 46-51, 46-52 and 46-59 of the General Statutes, it was bound to consider in granting the dissolution of the marriage and in exercising its discretion with respect to custody, support, alimony, counsel fees, and the award of property. As we have repeated time and again, trial courts have a distinct advantage over an appellate court in dealing with domestic relations, where all of the surrounding circumstances and the appearance and attitude of the parties are so significant. *LaBella* v. *LaBella,* 134 Conn. 312, 318, 57 A.2d 627. Trial courts, therefore, have broad discretion in determining questions of custody and the type, duration and amount of alimony and support which is proper in each case,

acting in accordance with the standards and guidelines provided in the General Statutes. *Aguire* v. *Aguire,* 171 Conn. 312, 313, 370 A.2d 948; *Pasquariello* v. *Pasquariello,* 168 Conn. 579, 584, 362 A.2d 835; *Krieble* v. *Krieble,* 168 Conn. 7, 8, 357 A.2d 475. "In determining whether the trial court abused its discretion 'the ultimate issue is whether the court could reasonably conclude as it did.'" *Grinold* v. *Grinold,* 172 Conn. 192, 374 A.2d 172. We find no abuse of discretion on the part of the trial court in this case.

There is no error.

In this opinion the other judges concurred.