ANN JACOBSEN *v.* PHILIP G. JACOBSEN

COTTER, C. J., LOISELLE, BOGDANSKI, LONGO and PETERS, Js.

Argued December 14, 1978—decision released April 10, 1979

*Dennis P. McDonough*, for the appellant (plaintiff).

*Richard A. Silver*, with whom, on the brief, were *Jay H. Sandak* and *Ernest F. Teitell*, for the appellee (defendant).

LONGO, J. The plaintiff has appealed from a judgment of the Superior Court which modified a prior judgment by terminating an award of alimony. The plaintiff and defendant were married on February 23, 1952; on August 24, 1972, the plaintiff was granted a divorce. The court in its decree incorporated by reference a stipulation of the parties relating to alimony, support and custody of two minor children. Custody of one of the children, Kevin, was awarded to the plaintiff. The plaintiff did not seek custody of the minor child, Karen, since she was not living with the plaintiff and was being supported by the defendant. The judgment provided that the alimony award of $250 per month would be reduced by $100 if the plaintiff no longer had custody of Kevin. By motion dated June 28, 1974, the defendant, after a hearing, was awarded custody of Kevin. On May 26, 1976, the plaintiff moved for modification requesting an increase in her alimony and filed a financial affidavit indicating that she had no income other than alimony, that she was unable to work and was completely disabled. The defendant thereupon filed a motion to terminate the plaintiff's alimony award and after a hearing the court on July 1, 1976, granted the defendant's motion terminating alimony, effective January 1, 1977. At that hearing the plaintiff admitted that she lied in informing her counsel that she had no other income besides her alimony. It also appeared that the plaintiff had falsely represented in her

original affidavit that she was unable to work, and testimony at the hearing established that she was in fact employed during the period mentioned in the affidavit. At the hearing, the plaintiff filed a second affidavit, indicating that she was employed.

The court found that at the time of the hearing the plaintiff was actively engaged in baby-sitting and working in live-in employment which she was physically and mentally able to do, and that she had the capacity to maintain herself without the defendant's alimony based on her assets and earning capacity. The court concluded that the plaintiff's alimony should be terminated due to substantially changed circumstances, in that the plaintiff was unemployed at the time of the divorce and had custody of the minor child and that neither of those circumstances was present at the time of the hearing on July 1, 1976.

On appeal, the plaintiff claims (1) that the trial court abused its discretion in refusing to find certain material facts of the plaintiff's draft finding which were undisputed; (2) both that the court erred in concluding that the plaintiff had the capacity to maintain herself without alimony based on her assets and earning capacity, and that the facts found did not support a conclusion that circumstances had so changed that her alimony should be terminated; and (3) that the court erred in certain rulings at trial.

I

At the outset, we find unpersuasive the plaintiff's claim that the court erred in refusing to include in its finding certain facts which the plaintiff claims were not disputed by the defendant. The thrust of

the claimed facts, alleged not to have been found by the court, is that the plaintiff was employed, and then lost her job and was rendered unable to work; that the plaintiff did baby-sitting work; that the plaintiff at the time of the hearing was unable to work; and that the plaintiff was injured and was under a physician's care. The court found that the plaintiff was previously employed, and that she did baby-sitting work. Those facts are explicitly included in the finding. The remaining claim, that the plaintiff had been and was unable to work, was directly contradicted by the testimony of a witness for the defendant, and is not an "undisputed" fact. The remaining claims, in view of our ultimate disposition of this appeal, are immaterial. Their addition to the finding is not warranted. Practice Book, 1978, § 3039; *Saphir* v. *Neustadt,* 177 Conn. 191, 193, 413 A.2d 843 (1979).

## II

The plaintiff's second contention is that the court could not reasonably conclude that she had the capacity to maintain herself without alimony, and that the court erred in concluding that there had occurred a substantial change in circumstances warranting the termination of her alimony payments. We find no merit to those arguments.

The stage must be set for our discussion by reference to two principles, evident in this court's review of any domestic relations case, but peculiarly appropriate in the context of this appeal. The first of these is that trial courts have a distinct advantage over an appellate court in dealing with domestic relations, where all of the surrounding circumstances and the appearance and attitude of the parties are so significant; the trial court, therefore, has

broad discretion in determining the type, amount, and duration of alimony, and in determining under what circumstances alimony should be terminated. *Lee* v. *Lee,* 174 Conn. 5, 8, 381 A.2d 529 (1977); *Spicer* v. *Spicer,* 173 Conn. 161, 164, 377 A.2d 259 (1977); *deCossy* v. *deCossy,* 172 Conn. 202, 204, 374 A.2d 182 (1977); *Grinold* v. *Grinold,* 172 Conn. 192, 194, 374 A.2d 172 (1976); *Aguire* v. *Aguire,* 171 Conn. 312, 313, 370 A.2d 948 (1976); *LaBella* v. *LaBella,* 134 Conn. 312, 318, 57 A.2d 627 (1948). The second principle is that the action of the trial court will not be disturbed unless it abused its legal discretion, and in determining this the unquestioned rule is that great weight is due to the action of the trial court and every reasonable presumption should be given in favor of its correctness; the ultimate issue is whether the court could reasonably conclude as it did, and in this connection, it is the sole province of the trier to pass upon the credibility of witnesses and the weight to be accorded the evidence. *Ayers* v. *Ayers,* 172 Conn. 316, 322, 374 A.2d 233 (1977); *Pasquariello* v. *Pasquariello,* 168 Conn. 579, 584, 362 A.2d 835 (1975); *Baker* v. *Baker,* 166 Conn. 476, 488, 352 A.2d 277 (1974); *DiPalma* v. *Wiesen,* 163 Conn. 293, 298, 303 A.2d 709 (1972); *Camp* v. *Booth,* 160 Conn. 10, 13, 273 A.2d 714 (1970).

We now address the plaintiff's claims. It is well settled that "[a] modification of an order for the payment of alimony or support is permitted only where there has been a showing that there has been a substantial change in the circumstances of either party and that these changed circumstances requiring modification were not contemplated by the parties at the time of the entry of the original decree and have arisen subsequent to the entry of that

decree." *Friedly* v. *Friedly,* 174 Conn. 279, 280, 386 A.2d 236 (1978); see General Statutes § 46b-86 (a).[1] In the plaintiff's motion for modification, she essentially argued that her circumstances had substantially changed from the time of the original 1972 divorce decree in that at that time she was a healthy woman capable of holding menial employment, but at the time of the termination of her alimony, she was physically disabled due to an injury to her back and was unable to engage in active employment. In addition, she claimed that at the time of the divorce in 1972, the defendant was grossing $996 per month, while at the time of termination of alimony he earned $1370 per month.

As, in general, the same sort of circumstances are relevant in deciding whether a decree may be modified as are relevant in making the initial award of alimony; *Sanchione* v. *Sanchione,* 173 Conn. 397, 401–402, 378 A.2d 522 (1977); it was incumbent upon the court, in rejecting the plaintiff's arguments and in terminating alimony, to consider the needs and financial resources of the parties, including the amount of the estate of the husband, his income, his age, health and earning capacity, and the age, health, station and separate estate of the wife. Id., 402; *England* v. *England,* 138 Conn. 410, 414, 85 A.2d 483 (1951).

The plaintiff claims that the trial court did not consider the above factors, but erroneously ter-

[1] "[General Statutes] Sec. 46b-86. MODIFICATION OF ALIMONY OR SUPPORT ORDERS AND JUDGMENTS. (a) Unless and to the extent that the decree precludes modification, any final order for the periodic payment of permanent alimony or support or alimony or support pendente lite may at any time thereafter be continued, set aside, altered or modified by said court upon a showing of a substantial change in the circumstances of either party. . . ."

minated the plaintiff's alimony on the grounds of substantial change in circumstances and the plaintiff's "rehabilitation." We cannot agree. We have examined the record, including the memorandum of decision, the court's finding and the transcript and we fail to observe any indication that the court, in deciding to terminate alimony, based its decision on the plaintiff's "rehabilitation" as an element of a change in circumstances. The specific reasons for termination are found in the court's conclusion, where the court stated: "The plaintiff's alimony should be terminated because there are substantially changed circumstances in that at the time of the divorce . . . she was unemployed and had custody of the parties' minor child, Kevin, and at the time of the hearing on the modification dated July 1, 1976, she was employed and had an earning capacity and no longer had the obligation of support or custody of the parties' minor child, Kevin." The court's conclusion stating that the plaintiff was physically and mentally able to carry on employment, without additional findings relating to the plaintiff's prior condition, does not warrant the implication sought by the plaintiff that the court was of the opinion that she had suffered from a prior physical and mental condition from which she had become rehabilitated.[2] We find that the plaintiff's claim lacks merit in that the trial court, as disclosed by the record, did not base its decision to terminate alimony on the plaintiff's rehabilitation.

---

[2] We point out that the concept of rehabilitation under the present circumstances is looked upon with disfavor in this jurisdiction. See *Grinold* v. *Grinold*, 172 Conn. 192, 195, 374 A.2d 172 (1976), where we stated: "This novel and elusive concept is not to be found in either the statutory provision concerning modification or the one establishing standards for granting alimony orders . . . nor has this court previously resorted to it."

It must be kept in mind that the trial judge in this case presided at seven different motions concerning custody and financial matters between the parties, and in each instance had an opportunity to view the demeanor and appearance of the parties and to become familiar with the totality of the circumstances surrounding the severely contested domestic difficulties of the parties. The court heard testimony that the plaintiff was able to work and, in fact, had been working from April through July of 1976; that she had falsely represented that the contrary was true; that she no longer had custody of the minor child, whom she had been supporting at the time of the divorce; and that she owned valuable real estate. In view of the principles that limit our review, and the court's findings, we find that the court could reasonably have concluded that there had been a substantial change in circumstances warranting the termination of the plaintiff's alimony.

### III

The plaintiff finally claims that the court committed error in refusing to hear medical evidence from the plaintiff's physician in support of the plaintiff's claim of disability, and in refusing to allow evidence showing that the defendant's financial affidavit was erroneous.

The plaintiff claims that the testimony of her physician would have shown that she was unable to work, a circumstance, she argues, which militates against the court's conclusion terminating her alimony. The court responded to her offer, in part, "I know all about that and I have been through this case time and time again," obviously a reference to the numerous occasions upon which the court

had heard the parties, and refused to hear the testimony. At the outset, the record does not reveal that the plaintiff's physician was present at the hearing and ready to testify on her behalf. Moreover, at oral argument, it was represented, and uncontradicted, that there was no witness at the hearing who could have testified for the plaintiff. As we initially indicated, the court had previously heard testimony, which the plaintiff does not attack, that the plaintiff had falsely stated in her first financial affidavit that she was unable to work, and heard further testimony, again unassailed, that the plaintiff in fact had been working during the period prior to the hearing. The court was thus able to scrutinize the plaintiff's testimony, and to credit the defendant's evidence concerning the plaintiff's ability to work. There was no error in the court's ruling.

The plaintiff additionally sought to attack the defendant's financial affidavit to show that it was "full of holes," and claims that the court erred in refusing to allow such an attack. The short answer to this claim is that no offer of proof appears in the record as to the purpose or content of the testimony the plaintiff sought to introduce. "Without knowing the purpose of the offer or the answer that might be forthcoming we are unable to rule on this assignment of error. Practice Book § 648; *Hanauer* v. *Coscia,* 157 Conn. 49, 56, 244 A.2d 611." *Johnson* v. *Newell,* 160 Conn. 269, 277, 278 A.2d 776 (1971). We find no error in the trial court's rulings.

There is no error.

In this opinion the other judges concurred.