[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a suit for dissolution of marriage brought by the plaintiff husband against the defendant wife. The parties were married September 18, 1965 in Bridgeport, Connecticut. There have been three children issue of the marriage: Catharine who is 24 years of age, Christine who is 18 years of age and Richard who will be 17 on August 21 of this year. All of the children are living in the family home with the defendant. The parties separated in November of last year, and the plaintiff, since then, has been residing in Milford with his lady friend.
The plaintiff is 47 years of age. Except for high blood pressure for which he takes medication to control, he is in good health. He has his high school equivalency which he received while in the Marine Corps. Upon his honorable discharge from the Marine Corps in 1966, he began work at Burndy as an electroplater where he worked for 24 years. He is, at present, unemployed, Burndy's having moved its electroplating department out of state. At present, he receives $252.00 per week in unemployment compensation.
The parties met each other while in high school. Actually, the defendant and her family moved into the same multi family house occupied by the plaintiff and his family. Immediately after the defendant's high school graduation, the parties married. The plaintiff was then in the service. The defendant remained at home. Nine months after their marriage the parties' first child was born. The defendant worked for the first five months of her pregnancy doing secretarial work working for the Neighborhood Youth Corps. Once Catherine was born the defendant then worked keeping house, raising the children and performing the household chores. In the year 1986, she went to work at Friendly's as a part time bookkeeper and then in November, 1987 to Warnaco where she is a price checker, changing labels and tags on garments returned. The defendant is in good health and is also 47 years of age.
The youngest child, Richard, has completed his junior year at Stratford High School. He will be entering his senior year in September. He is working odd jobs for the summer.
The plaintiff testified that the defendant changed ten CT Page 589 years ago when the defendant "went off on something else." She joined the Bethel Baptist Church which held meetings on Wednesday and Friday evenings and services on Sundays. These meetings would last two to three hours. It was the plaintiff's claim that this separated the parties. In November, 1989, he moved out and moved in with a lady friend who "offered him a place to stay."
The defendant in her pleadings admits that the marriage has broken down. She does not want the dissolution of the marriage. She wants to "stick by him." Her church activity which commenced eight and a half years ago was because of her upset over the plaintiff's drinking. She was told about the plaintiff's lady friend four years ago but still cares for the plaintiff and is willing "to give him another chance."
As previously noted, the plaintiff is, at present, unemployed. The defendant is clearly entitled to alimony, but by reason of the plaintiff's unemployment and his obligation on the outstanding indebtedness, alimony has to be nominal at this time.
In 1979, the parties purchased the present family home. It is stipulated that the value of that property is $125,000.00. The original purchase price for the property was $37,000.00. Two Thousand Dollars of savings was used to purchase the property plus $2,500.00 borrowed from the plaintiff's parents which has not been paid back. The balance was obtained by a thirty year mortgage from People's Bank. During all of this period, the plaintiff has made the mortgage payments except for the last three months when the defendant has paid. The plaintiff was the breadwinner during the marriage and worked the night shift, 3:30 p. m. to midnight, at Burndy's during the entire marriage including Saturdays. It is clear that the drinking never interfered with his working.
Aside from the family home, the only other family asset of substantial value is the plaintiff's pension which will be payable to him upon reaching 65 in an amount of $356.44 per month. The questions for the court to consider are alimony, support and division of family assets. The parties are agreed that custody of the minor child, Richard, shall be with the defendant that the plaintiff shall have rights of reasonable visitation upon reasonable notice.
In addition to the foregoing findings, the court finds as follows:
1. There is the requisite jurisdiction. CT Page 590
2. The allegations of the complaint have been proved and are true.
3. The marriage of the parties has broken down irretrievably.
4. The plaintiff is at fault for the breakdown of the marriage.
With respect to alimony, support and a division of the property of the parties, the law to be considered has been stated as follows:
 To begin with, our alimony statute does not recognize an absolute right to alimony, General Statutes 46b-82; Thomas v. Thomas, 159 Conn. 477, 487, 271 A.2d 42 (1970); `This court has reiterated time and again that awards of financial settlement ancillary to a marital dissolution rest in the sound discretion of the trial court.' (Citation omitted.) Although the court is required to consider the statutory criteria of length of marriage, causes for dissolution, the age, health, station in life, occupation, amount and sources of income, assets and opportunity for future acquisitions of assets of each of the parties, (citation omitted), no single criterion is preferred over all the others. In weighing the factors in a given case, the court is not required to give equal weight to each of the specified items. Nevertheless, it is rather obvious that in making financial determinations, the financial circumstances, both actual and potential, are entitled to great weight. Valente v. Valente, 180 Conn. 528, 530
(1980).
The defendant's nonmonetary contributions to the family assets ought to be considered. In the recent case of Blake v. Blake, 207 Conn. 217 at 230 (1988), our Supreme Court cited with approval the language of O'Neill v. O'Neill, 13 Conn. App. 300
at 311 (1988), in which our Appellate Court stated as follows:
 A property division ought to accord value to those nonmonetary contributions of one spouse which enable the other spouse to devote substantial effort to paid employment which, in turn, enables the family to CT Page 591 acquire tangible marital assets. The investment of human capital in homemaking has worth and should be evaluated in a property division incident to a dissolution of marriage. We hold, accordingly, that an equitable distribution of property should take into consideration the plaintiff's contributions to the marriage, including homemaking activities and primary caretaking responsibilities.
The court has considered all of the criteria of46b-81, 46b-82 and 46b-84 of the General Statutes together with all of the evidence and the case law. Since "[i]t would serve no useful function to require the trial court ritualistically to rehearse the statutory criteria that it has taken into account," Scherr v. Scherr, 183 Conn. 366, 368, this court will not recount those statutory criteria and the evidence, other than has been previously stated. "The court is not obligated to make express findings on each of these statutory criteria." Weiman v. Weiman, 188 Conn. 232, 234
(1982).
The court enters the following orders:
1. A decree of dissolution of the marriage shall enter on the grounds of irretrievable breakdown of the marriage.
2. Custody of the minor child, Richard Henry Taylor, born August 21, 1973 shall be with the defendant. The plaintiff shall have rights of reasonable visitation upon reasonable notice as agreed upon between the plaintiff and Richard.
3. The plaintiff shall pay to the defendant by way of support the sum of $64.00 per week for so long a period as he receives unemployment compensation. The plaintiff shall notify his counsel who shall, in turn, notify the defendant's counsel at such time as he obtains employment. He shall also advise his counsel regarding his gross and net wages at such employment which shall also be communicated by his counsel to defendant's counsel.
4. The plaintiff shall pay to the defendant alimony in the amount of $1.00 per year terminable upon the death of either of the parties or the defendant's remarriage. The same provisions hereinbefore set forth in paragraph two regarding the plaintiff's return to either full time or part time employment shall apply equally as to this paragraph.
5. The plaintiff shall maintain such life insurance as he has CT Page 592 at present and available to him through any future employment naming the minor child as irrevocable first beneficiary thereof so long as he is obligated to pay support. This applies to the plaintiff's policy with the Equitable Insurance Company, and he shall supply proof of such designation of beneficiary within sixty (60) days of this date.
6. The plaintiff shall maintain such medical and hospital insurance as he may have through his employment for the benefit of the minor child. Any uninsured or unreimbursed medical or dental expenses incurred for the minor child shall be divided equally between the parties. The defendant shall have the benefit of the provisions of 46b-84 (c) of the General Statutes.
7. The plaintiff shall cooperate with the defendant so that she may have the option of the continuation of medical insurance benefits under the plaintiff's medical insurance plan pursuant to the provisions of 38-262 (d) of the General Statutes at her expense.
8. The defendant shall have exclusive possession of the real property at 80 Avon Street, Bridgeport, for a period of four (4) years or such shorter period as she may choose. At the end of such period, the property shall be placed upon the market for sale at a listing price and with a listing broker as agreed upon between the parties. If the parties are unable to agree upon a listing price, the plaintiff shall select an appraiser and the defendant shall select an appraiser and the two appraisers shall select a third appraiser, and the listing price shall be the average price of the three appraisers. If the parties are unable to agree upon a listing broker, the listing broker shall be named by the President of the Bridgeport Multiple Listing Board of Realtors. The parties shall accept any offer within five per cent (5%) of the listing price. Upon the sale of the property, after the payment of the existing first mortgage, brokerage commissions, customary closing expenses, reasonable attorney's fees upon the sale, and conveyance taxes, reimbursement to the defendant of all principal payments made by her to reduce the principal balance of the mortgage from the date hereof, the net proceeds shall be divided sixty-five per cent (65%) to the defendant and thirty-five per cent (35%) to the plaintiff. The defendant may purchase the plaintiff's interest in the property by paying to the plaintiff thirty-five per cent (35%) of the net equity as previously defined as agreed upon between the parties or as fixed by the appraisers less an CT Page 593 appropriate amount because of a saving of brokerage commission. The cost of the appraisers, if necessary, shall be shared equally by the parties. The court shall retain jurisdiction regarding the terms and conditions of sale in the event of the disagreement of the parties.
9. Between the date of sale or the purchase of the plaintiff's interest in said real property, the defendant shall pay the existing first mortgage (principal to be reimbursed out of the sale proceeds in computing net equity), insurance, taxes, and other expenses in connection with said property and shall indemnify and hold harmless the plaintiff from any claim or demand thereon. Title to said premises shall be as tenants in common, the plaintiff's interest being 35 per cent and the defendant's interest being 65 per cent. Pursuant to the provisions of 46b-81 of the General Statutes, the court hereby assigns 30% of the plaintiff's half interest in said property (15% of the whole) to the defendant. The defendant shall be responsible for all ordinary repairs to said property. Any extraordinary repairs, defined to be any single repair in excess of $150.00, shall be paid 65% by the defendant 35% by the plaintiff. The defendant shall be responsible for the first $150.00 of such extraordinary repair, and such repair shall not be incurred, except in the event of an emergency, without the consent of the plaintiff, which consent shall not be unreasonably withheld.
10. The tangible personal property at 80 Avon Street, Stratford, shall be the defendant's free of any claim or demand by the plaintiff except for the following items: stepladder, power tools, his father's tools, yard hedge trimmer, weed wacker, and a small portable refrigerator, all of which shall be the plaintiff's free of any claim or demand by the defendant. Such tangible personal property as is in the plaintiff's possession shall be his free of any claim or demand by the defendant.
11. The 1983 Oldsmobile automobile, Connecticut National Bank checking account and the plaintiff's pension at Burndy's shall be his free of any claim or demand by the defendant.
12. The 1988 Pontiac automobile, North America Bank account, Warnaco Christmas Club and Warnaco employee savings account shall be the property of the defendant free of any claim or demand by the plaintiff.
13. The plaintiff shall be responsible for the liabilities listed in his financial affidavit and shall indemnify and hold harmless the defendant from any claims or demands CT Page 594 thereon.
14. The defendant shall be responsible for her outstanding car loan and her indebtedness to the Warnaco Credit Union and shall indemnify and hold harmless the plaintiff from any claims or demands thereon.
15. Each party shall pay his or her own attorney's fees.
Judgment shall enter in accordance with the foregoing.
EDGAR W. BASSICK, III, JUDGE