[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a suit for dissolution of marriage brought by the plaintiff wife against the defendant husband. The parties were married in New York City, New York on June 17, 1952. There have been two children born issue of the marriage, Cheryl, 37, and Debra, 35. The parties separated in early December, 1988 because the defendant wanted "his space and distance." He is presently living in a rented apartment at 200 East 64th Street in New York City. The plaintiff is living in the family home at 64 Goodridge Road in Redding.
At the time of the parties' marriage, the plaintiff was twenty years of age and a student at Vassar College. The defendant was twenty-two years of age and a law student at New York University. The plaintiff left college after completing two years. The defendant finished law school in 1954 — 1955 and was admitted to the New York Bar. Plaintiff claims that the defendant's first job with the New York law firm of Carlton and Carlton was because of her introduction.
While attending law school, the defendant worked part time in his father's accounting office preparing "spread sheets." In 1972 the defendant was a name partner in the firm of Rubin, Rubin and Pearlman. In 1973 he was a partner in the firm of Pearlman and Pollock and in various firms thereafter until 1984 when he took a sabbatical. During all this time, the defendant did well. He was very ambitious, worked hard and, based upon the plaintiff's testimony, was introduced to a number of clients through her family. During all of their marriage, the parties lived lavishly, traveled extensively to Europe, London, France, Portugal, Spain, the Bahamas and the Caribbean.
Initially, they rented an apartment at 295 Central Park West. In 1961 they bought land in Weston and built a CT Page 428 contemporary house. In 1962 they purchased an adjoining two acre parcel and built a tennis court. They showed three horses and owned hunters and jumpers. In 1974 they sold the Weston property and moved back to New York, purchasing an apartment at 880 Fifth Avenue. In 1979 they purchased the present house in Redding and sold the Fifth Avenue apartment. During this latter period, they also owned a condominium in West Hampton Beach in Long Island.
The plaintiff is 57 years of age. In 1978 she had a radical mastectomy with chemotherapy for two and a half years. She has had reconstructive surgery in 1981-82 and January of 1990. In 1986 she was involved in a serious automobile accident which left her with some residual disability impairing her left ankle and right elbow.
In addition to raising the children, entertaining clients for the defendant and keeping house, the defendant in 1978 began work as a landscape designer. She earned $7,000.00 her first year, then $10,000.00 and $15,000.00 for the last few years. In her best year she earned $20,000.00. She claims she can no longer do this because of the residual impairment of her left ankle and right elbow. Her last year was 1984.
The defendant is 60 years of age. He is in good physical health but, as described by the plaintiff, is depressed, anxious and angry. He has been treating with a psychiatrist for depression since February, 1989. He works for Charles Evans as an independent contractor. As disclosed in his financial affidavit, his weekly net income after business expenses is $4,499.00 or $233,948.00 per year. After deductions for social security, federal, state and city taxes plus a mandatory pension plan contribution, his net weekly income is $2,140.00, $122,668.00 per year. His financial affidavit shows other net weekly income of $418.00. In 1989, his gross income from Charles Evans was $270,000.00, he received $44,000.00 from Lloyd's syndicates and interest from T Bills of slightly less than $29,200.00. The defendant deducts the cost of his New York apartment as business expense in reaching his net taxable income. In 1990 he expects $250,000.00 from Charles Evans, $50,000.00 from Lloyds and $30,000.00 in interest income.
It is admitted by the pleadings that the marriage of the parties is broken down irretrievably. The defendant claimed in December, 1988 that he felt "suppressed and suffocated" and wanted "space and time." He admitted to the plaintiff that he had been having an affair with a lady friend. After leaving the family home in early December, he had his lady friend move into the New York apartment with him. CT Page 429
A substantial portion of the parties' total assets is represented by the value of the real property in Redding and the value of their art collection. The disagreement between the parties is upon the value of the real property and the value of the art. There is substantial disagreement between the parties regarding the division of their marital assets.
The real property has been valued between $936,000.00 (defendant's financial affidavit) and $610,000.00 (Peter Pisaretz appraisal, see plaintiff's exhibit C). The art has been valued between $2,500,000.00 (plaintiff's testimony) and $1,500,000.00 (Richard S. Field and Sam Hunter, see defendant's exhibits 6 and 7). The other assets of the parties (excluding the net equity of the real property, the art, the parties' other tangible personal property and jewelry) consisting of stocks, bonds, IRA's, pension and retirement plans at pretax values, treasury bills, treasury notes, receivables, checking accounts, certificates of deposit and money market accounts and motor vehicles totals $1,362,355.00.
The court finds the value of the real property to be $625,000.00. The property is subject to a mortgage in the principal amount of $139,183.00 for a net equity of $485,817.00. The court finds the value of the art to be $1,503,000.00 (Hammer price). On this basis, the total assets of the parties (excluding jewelry and other tangible personal property) is $3,351,172.00. Of this amount, the plaintiff is very careful to point out that she has received net proceeds from her personal injury claim of $278,000.00, an inheritance of $38,000.00 from her father's estate, $12,000.00 received from insurance proceeds and $20,000.00 received from insurance proceeds on her mother's death.
The plaintiff has separated the proceeds of her personal injury settlement and shows them as $194,532.00 remaining. The defendant has separated the $100,000.00 he inherited from his mother's estate as consisting of $55,450.00 of his bank accounts, $37,400.00 for the painting The River by Roy Lichtenstein and $7,150.00 for the painting Yellow Landing by James Rosenquist. If one were to exclude these assets totalling $194,532.00 and $100,000.00, the marital assets would total $3,056,640.00
In February, 1988, the plaintiff gave $100,000.00 to the defendant because he needed the money. This was her share of the proceeds on the sale of the parties' New York apartment. The plaintiff testified that she would not have given this money to the defendant had she known about his affair with his lady friend. The court considers that a fair and equitable division of the assets should include an assignment of the defendant's CT Page 430 estate of that $100,000.00.
The plaintiff has, also, incurred additional counsel fees because of services incurred by her counsel which the court feels were necessitated by procedural steps taken by the defendant and not necessary to the disposition of this case. For this reason, the court is allowing the sum of $35,000.00 as a contribution toward the plaintiff's counsel fees.
In the interest of both of the parties, the court will not set forth the facts any further. Each of the parties has presented claims for relief in support of her or his position and setting forth her or his version of the facts together with very fine arguments.
With respect to alimony and a division of the property of the parties, the law to be considered has been stated as follows:
 To begin with, our alimony statute does not recognize an absolute right to alimony, General Statutes 46b-82; Thomas v. Thomas, 159 Conn. 477, 487, 271 A.2d 42 (1970); `This court has reiterated time and again that awards of financial settlement ancillary to a marital dissolution rest in the sound discretion of the trial court.' (Citation omitted.) Although the court is required to consider the statutory criteria of length of marriage, causes for dissolution, the age, health, station in life, occupation, amount and sources of income, assets and opportunity for future acquisitions of assets of each of the parties, (citation omitted), no single criterion is preferred over all the others. In weighing the factors in a given case, the court is not required to give equal weight to each of the specified items. Nevertheless, it is rather obvious that in making financial determinations, the financial circumstances, both actual and potential, are entitled to great weight. Valente v. Valente, 180 Conn. 528, 530
(1980).
The court has considered all of the criteria of46b-81, 46b-82 and 46b-84 of the General Statutes together with all of the evidence and the case law. Since "[i]t would serve no useful function to require the trial court CT Page 431 ritualistically to rehearse the statutory criteria that it has taken into account," Scherr v. Scherr, 183 Conn. 366, 368, this court will not recount those statutory criteria and the evidence, other than has been previously stated. "The court is not obligated to make express findings on each of these statutory criteria." Weiman v. Weiman, 188 Conn. 232, 234
(1982).
In addition to the foregoing facts, the court finds as follows:
1. There is the requisite jurisdiction.
2. The allegations of the complaint have been admitted, but also have been proved and are true.
3. The marriage of the parties has broken down irretrievably.
4. The defendant is at fault for the breakdown of the marriage.
Having considered the indicia and criteria of46b-81, 46b-82 and 46b-62 of the General Statutes, the court enters the following orders:
1. The marriage of the parties shall be dissolved on the grounds of irretrievable breakdown of the marriage.
2. The plaintiff shall retain title to the residence located at 64 Goodridge Road, Redding, Connecticut, subject to the existing mortgage upon the property. The plaintiff shall be wholly responsible for the payment of the remaining balance of the first mortgage and shall indemnify and hold harmless the defendant from any claims or demands thereon.
3. The defendant shall be the sole owner of the existing lease upon the real property at 200 East 64th Street, New York City, New York, and shall be wholly obligated upon such lease and shall indemnify and hold harmless the plaintiff upon any claim or demand thereon. He shall also be entitled to the amount of any security deposit paid by the parties.
4. The defendant shall pay over to the plaintiff the sum of $100,000.00 as an assignment of estate pursuant to the provisions of 46b-81 of the General Statutes within thirty (30) days of the date hereof.
5. The defendant shall be entitled to keep such treasury securities as are on deposit with Morgan Guaranty Trust Company as collateral for each parties' liability upon certain syndicates of Lloyd's of London. The defendant CT Page 432 shall be wholly responsible upon any claims upon the plaintiff as an underwriter in Lloyd's syndicates and shall indemnify and hold her harmless from any claims or demands thereon.
6. The art collection of the parties shall be divided as follows: the Jasper Johns' Numerals, the Jim Dine Palette, the Calder Sea Lion, and the Kelly Daffodil to the plaintiff free of any claim or demand by the defendant, and the Jim Dine Landscape, Bathrobe and Night Portrait, the Adolph Gottlieb Imaginary Landscape I, the Jasper Johns' Savarin 3 and Savarin 6, the Lichtenstein Lamp and The Sower, the Lindquist The River, the Rauschenberg Banner, the Rosenquist Yellow Landing, the Calder Red Polygons, and Untitled shall be the defendant's free of any claim or demand by the plaintiff. Arrangements shall be made by counsel for the parties for the appropriate transfer of these properties between the parties within thirty (30) days of the date hereof.
7. The defendant shall pay the plaintiff during his lifetime and until her death or remarriage the sum of $6,500.00 per month as alimony.
8. The defendant shall designate the plaintiff as beneficiary of any preretirement death benefits in the Kenneth D. Pearlman pension and shall designate the plaintiff as irrevocable first beneficiary of his existing life insurance policies with National Life of Vermont, Provident Mutual Life of Philadelphia, New York Life and Phoenix Mutual and shall maintain said policies with payable upon death values of no less than $100,000.00, such designation to continue so long as he is obligated to pay alimony. The defendant shall supply proof of the designation of beneficiary upon all of the foregoing instruments within sixty (60) days of the date hereof and annually thereafter.
9. The defendant shall indemnify and hold harmless the plaintiff upon any deficiency, interest or penalties upon any previously filed joint federal, state or city income tax returns.
10. The defendant shall pay forthwith, if he has not already done so by the date hereof, any outstanding arrearages on the pendente lite orders existing upon this date which shall include, but not by way of limitation, the balances of outstanding household bills prior to the pendente lite orders as follows: SNET $107.24, MCI $135.09, Connecticut Light Power $142.13 and Sonitrol $129.60 and Dr. Paula Moyniahn's bill in the amount of $6000.00. The defendant shall also pay the balance of the medical bills after CT Page 433 medical reimbursement as follows: Sheldon Opperman, BSC Anesthesia Associates, Lenox Radiology Medical Imaging, Lenox Hill Hospital, Dr. Peter Small, Dr. George Bukaha, Dr. Ian Van Praagh, and Kyoti Labs and shall indemnify and hold harmless the plaintiff from any claims or demands thereon. Any unpaid amounts pursuant to the pendente lite orders shall not be merged herein but shall survive the same and remain the obligation of the defendant.
11. The plaintiff shall be responsible for the remaining liabilities as listed in her revised financial affidavit of May 30, 1990, and shall indemnify and hold harmless the defendant from any claims or demands thereon. The defendant shall be wholly responsible upon those liabilities listed in his financial affidavit of May 29, 1990, and shall indemnify and hold harmless the plaintiff from any claims or demands thereon.
12. The defendant shall cooperate with the plaintiff so that she may have continued coverage under the Charles Evans group medical plan either pursuant to 38-262 (d) of the Connecticut General Statutes or the federal statute known as COBRA, the same, however, to be at the plaintiff's expense.
13. The defendant shall transfer to the plaintiff the 1986 Subaru automobile. She shall be wholly responsible for the outstanding loan upon that automobile and shall indemnify and hold harmless the defendant from any claim or demand thereon.
14. The defendant shall be entitled to any estimated tax payments made for the tax year 1990.
15. The S K Pearlman Foundation shall be retained as a single tax exempt entity. The funds on hand shall be divided between the parties as Trustees and administered separately by each of them in a manner consistent with applicable law and the Foundation documents including the filing of a single tax return.
16. Each party shall retain his or her jewelry free of any claim or demand by the other party.
17. Except for items of jewelry and art previously provided for herein and the tangible furnishings in his study and the furniture in the living room, the remaining property at 64 Good Ridge Road in Redding shall be the property of the plaintiff free of any claim or demand by the defendant. The furniture and furnishings in his study (couches, television set and wall units) and the CT Page 434 furniture in the living room shall be the defendant's free of any claim or demand by the plaintiff. All tangible personal property located in the apartment at 200 East 64th Street, except for the items of Ms Levine, shall be the property of the defendant free of any claim or demand by the plaintiff. The property of the plaintiff shall include all linens, crystal, china, silver (whether flatware or holloware) and all other tangible personal property at 64 Good Ridge Road in Redding. The china placed in storage by the defendant shall also be the property of the plaintiff.
18. The defendant shall pay to the plaintiff as a contribution toward her legal fees the sum of $35,000.00 which shall be paid within thirty (30) days of the date hereof. Except as otherwise provided herein, each party shall pay his or her own attorney's fees.
19. Except for such personal property as has been provided for herein, the remaining monetary assets of each of the parties as noted on each party's financial affidavit, net of the liabilities reflected therein, shall be the property of that party free of any claim or demand by the other party.
20. The defendant's pension and retirement plans, except as otherwise provided herein under paragraph 8, shall be his free of any claim or demand by the plaintiff. The plaintiff's IRA accounts shall be hers free of any claim or demand by the defendant.
Judgment shall enter in accordance with the foregoing.
EDGAR W. BASSICK, III, JUDGE