[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The parties were married in Waterbury, Connecticut on September 6, 1963, and have been residents of the State of Connecticut for at least twelve months next preceding the date of this hearing. There is one minor child issue of this marriage, Matthew Reed, born May 5, 1977
The plaintiff, age 48, is a high school graduate who worked before and for approximately two years after her marriage both as a hair dresser and a clerk for a transportation company. She still maintains hairdresser license. She stopped work to have a family but has worked on periodic occasions as a receptionist at the Monroe Town Hall. She relates to having had four children from the marriage. The first was born dead, the second died after four or five days, the third Charles, 22, moved out of her home after a disagreement with the mother and is presently living with the father, as is the minor child. Matthew, age 14.
Plaintiff relates that the husband who is a project engineer at General DataComm, Inc. was in charge of the family assets. She testified, however, that after heavy trading in General DataComm stock during the last several years there is little or no present equity in the marital residence or in any other asset of the parties. She claims to have received "not a penny from the purchase and sale of said stock." She admits the I marriage has had "its ups and downs for a long period of time" I and states the husband wants a divorce but that she does not. The plaintiff expressed an interest in pursuing a vocation in the health care field and is in apparent good health.
Plaintiff's financial affidavit reflects weekly income of $500.00 by way of defendant's court ordered payments, with weekly expenses of $758.00 of which over $500.00 is directly connected with the maintenance of the marital residence. She lists assets of $30,700.00 which includes a $10,000.00 Lincoln automobile, $18,700 equity in the marital residence and $2,000.00 in furniture, jewelry and personal affects. She has total liabilities of $197.00. CT Page 8243
The defendant husband is also 48 years old, a high school and college graduate with an engineering degree. He has been employed by General DataComm, for the past 6 years as a project engineer. His starting salary was $60,000.00 and his 1990 gross income was $75,609.00. He confirms that large sums of money have been lost in the trading of General DataComm stock but portrays the wife as a willing and sharing participant. He claims to have borrowed against his 401K Plan, and life insurance policies, closed his IRA account, increased his credit card liabilities and obtained a $175,000.00 equity loan against the house. He attributes all of the debt to the stock losses incurred and to keep his court obligations for alimony and support in a current status. He projects a concern about his job stability and the retention of same. He has had several jobs over the course of his engineering career.
The defendant's financial affidavit reflects a gross weekly income of $1,659.00 or $86,200.00 annually with a net weekly income of $1,155.00. He claims weekly expenses of $975.00. He lists $9500.00 in liabilities and $17,300.00 in assets consisting of a $5,000.00 car, $500.00 in home equity, $7,800.00 in is 401K Plan, $1,000.00 in a coin collection and $3,000.00 in an anticipated income tax refund.
Evidence was presented by both sides concerning the causes for the marital breakdown. It would serve no useful purpose to repeat the testimony. Suffice it to say that the plaintiff portrayed a picture of adulterous conduct by the defendant from at least 1988 until the present. She testified the husband wanted to be a single person and was out of the house more than he was in it, had left the marital home on prior occasions for varying lengths of time, that the marriage had ups and downs over a long period and that the husband wanted the divorce but she did not. The defendant admitted his wife's substantive allegations including adultery but both he and the "other woman" testified that the adulterous conduct only occurred subsequent to the irretrievable breakdown of the marriage and after the institution of this action. The husband alleged the marital problems were due to the influence which the plaintiff's parents exerted over her, a difference in lifestyles that manifested itself early on in the marriage, the refusal of the wife to compromise on any issue and her absolute refusal to become involved in the husband's social activities and business career. The two children seemed to fortify the husband's portrayal of the wife as being inflexible on most issues and that both parents were at fault for the breakdown of the marriage.
The evidence presented established that the marriage has irretrievably broken down. Judgment may enter dissolving the marriage on that ground. CT Page 8244
With respect to alimony an a division of the property of the parties, the law and elements thereof to be considered are stated in 46b-81 and 46-82 of the Connecticut General Statutes and are interpreted as follows:
"To begin with, our alimony statute does not recognize an absolute right to alimony. General Statutes 46b-82. Thomas v. Thomas, 159 Conn. 477, 486, (1970). `This court has reiterated time and again that awards of financial settlements ancillary to a marital dissolution, rest in the sound discretion of the trial court.' Posada v. Posada, 179 Conn. 568, 572
(1980).
Although the court is required to consider the statutory I criteria of length of marriage, causes for dissolution, the age, health, station in life, occupation, amount and sources of income, assets, and opportunity for future acquisition of assets of each of the parties, Fucci v. Fucci, 179 Conn. 174, 179
(1979), no single criterion is preferred over all others. In weighing the factors in a given case the court is not required to give equal weight to each of the specified items. Nevertheless, it is rather obvious that in making financial determinations, the financial circumstances, both actual and potential, are entitled to great weight." Valente v. Valente,180 Conn. 528, 530-531 (1980).
"A property division ought to accord value to those nonmonetary contributions of one spouse which enable the other spouse to devote substantial effort to paid employment which, in turn, enables the family to acquire tangible marital assets. The investment of human capital in homemaking has worth and should be evaluated in a property division incident to a dissolution of marriage. We hold, accordingly, that an I equitable distribution of property should take into consideration the plaintiff's contributions to the marriage, including homemaking activities and primary caretaking responsibilities." Blake v. Blake, 207 Conn. 217 at 230 (1988) where our Supreme Court cited with approval the language of O'Neill v. O'Neill, 13 Conn. App. 300 at 311 (1988).
Since "[i]t would serve no useful function to require the trial court ritualistically to rehearse the statutory criteria that it has taken into account." Scherr v. Scherr, 183 Conn. 366,368 (1981), this court will not recount those statutory criteria and the evidence, other than has been previously stated. "The court is not obligated to make express findings on each of these statutory criteria. (46b-82 and 46b-81 (c))." Weiman v. Weiman, 181 Conn. 232, 234 (1982). CT Page 8245
The court has carefully considered all of the criteria and requirements set forth in Connecticut General statutes 46b-56,46b-62, 46b-81, 46b-82 and 46b-84, as well as all other relevant statutes, the cases dealing with the subject and all of the evidence presented in this particular case in reaching the decisions reflected in the following orders.
1. The parties shall cooperate to finalize a sale of the marital residence at the earliest possible date for the highest possible price. After payment of the broker's commission, the present first mortgage, the home equity loan and the reasonable and necessary closing costs. The net proceeds shall be divided 80 percent to the wife and 20 percent to the husband. The husband shall be responsible for all mortgage payments, real estate taxes and insurance until the house is sold. The husband shall be entitled to a credit for any reduction in the principal amount of said mortgage and home equity loan between the date hereof and the sale date which sum shall be deducted from the wife's share of the net proceeds and added to the husband's share.
 Neither party has evidenced an interest in the marital residence which they seen to agree has little or no equity in this depressed market. However, the husband shall have a thirty day option in which to purchase the wife's interest in same by quit claim deed subject to existing encumbrances for $7,500.00 if he so elects. In any event the husband shall be solely liable for all debts and deficiencies which may arise in connection with ownership of the marital residence and shall hold the wife harmless in connection therewith.
2. The husband shall pay periodic weekly alimony of $310.00 to the plaintiff for a period of twelve years, or until her death, remarriage or cohabitation under law, whichever event shall first occur. An immediate wage execution shall issue to ensure said payments. The defendant shall further pay as additional alimony 10% of any wage increase or bonuses over and above his 1991 gross salary.
3. The parties shall have joint legal custody of the minor child, Matthew. The defendant shall have physical custody and the plaintiff wife shall have rights of liberal flexible and reasonable visitation with due regard given to Matthew's needs and activities in determining visitation.
4. The defendant shall be solely responsible for the child support of Matthew. The court has given due consideration to the Connecticut Child Support Guidelines and finds that the application of same would be inequitable and CT Page 8246 inappropriate in this case. This finding is fortified by the present and potential earning capacity of the wife when compared to the present and potential earning capacity of the husband. The court has further considered the issue of non custodial child support when setting the other orders contained herein.
5. The defendant shall maintain medical and dental insurance for the benefit of the minor child as is available through his employment. He shall further be solely responsible for all unreimbursed medical and dental expenses for the child and all present outstanding medical bills including Doctor. Fatse's dental bill of approximately $700.00.
6. The defendant shall maintain the plaintiff wife on his current medical insurance for as long as he may legally do so in accordance with the COBRA legislation and he shall be solely responsible for the payment of same.
7. The parties shall be responsible for the payment of their respective counsel fees with the exception that the husband shall pay two thousand dollars toward the plaintiff's counsel fees within a period of six months.
8. The defendant shall be solely responsible for the payment of all attorney fees in the amount of $2,458.25 to Nicholas Wocl, court appointed counsel for the minor child, payment to be made within ninety days hereof.
9. The husband shall continue all existing life insurance policies with the wife as irrevocable beneficiary as long as his obligation to her hereunder shall exist.
10. The 1990 Federal Income Tax Return refund in the approximate amount of $6,000.00 shall be divided equally between the parties.
11. The plaintiff shall have the 1987 Lincoln Town Car and the defendant shall have the 1988 Dodge Daytona.
12. The plaintiff shall have the coin collection which the parties value at approximately $2,000.00.
13. The husband shall retain his 401K Retirement Plan in the approximate amount of $8,500.00.
14. The husband shall be responsible for and hold the wife harmless concerning all debts of the parties and or as may be reflected on their most recent respective financial affidavits. CT Page 8247
15. The husband shall have for the benefit of Matthew and Charles all of the bedroom furniture and personal affects formerly in the childrens' bedrooms as set forth in defendant's Exhibit 7 which the wife shall immediately make available to the defendant.
16. The wife shall have all of the remaining furniture and furnishings in the marital residence except the following: Tools and home maintenance items, game items, fire place related items, and patio furniture.
17. The wife shall continue to act as trustee for Matthew's trust account which was opened by the wife in her name on June 6, 1978 and funded periodically and primarily with money received from her parents.
BALLEN, JUDGE.