[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiff Sheryl Friedman and defendant Bruce Friedman were married on August 7, 1977, in Akron, Ohio. They nave lived in Connecticut since 1988. After a trial before this court, the court on November 17, 1993, found the allegations of the complaint to be true and dissolved the marriage on the statutory ground that the marriage has broken down irretrievably. The court further found that the parties' written stipulation as to custody and visitation of their two minor children was fair and equitable under all the circumstances and incorporated the agreement into the decree of this court. The court reserved decision on issues relating to alimony, support, education of the minor children, and a division of the parties' assets. Orders addressing these issues are set forth in the latter part of this memorandum.
In deciding issues relating to an equitable distribution of property, alimony, support, custody, visitation, the needs of minor children, and counsel fees, the court must consider the statutory criteria set forth in Chapter 815j of the General Statutes as well as the relevant decisional law. With respect to educational expenses, the cases of Cleveland v. Cleveland, 161 Conn. 452 (1971) and Flynn v. Flynn, 7 Conn. App. 745 (1986) are relevant. With respect to alimony and a division of property, the law to be considered has been stated as follows:
 "To begin with, our alimony statute does not recognize an absolute right to alimony, General Statutes 46b-82; Thomas v. Thomas, 159 Conn. 477, 486, 271 A.2d 42 (1970); `This court has reiterated time and again that awards of financial settlements ancillary to a marital dissolution rest in the sound discretion of the trial court.' (Citation omitted.) Although the court is required to CT Page 11173 consider the statutory criteria of length of marriage, causes for dissolution, the age, health, station in life, occupation, amount and sources of income, assets and opportunity for future acquisition of assets of each of the parties, (citation omitted), no single criterion is preferred over all the others. In weighing the factors in a given case, the court is not required to give equal weight to each of the specified items. Nevertheless it is rather obvious that in making financial determinations, the financial circumstances, both actual and potential, are entitled to great weight." Valente v. Valente, 180 Conn. 528, 530 (1980).
* * * * *
 "In fixing the nature and value of the property to be assigned, the court, in addition to the criteria listed in General Statutes 46b-82, must also consider `the opportunity of each for future acquisition of capital assets and income . . . [as well as] the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates.' (citation omitted)." Elliott v. Elliott, 14 Conn. App. 541, 546 (1988).
The contested issues have been decided in the context of the statutory criteria and decisional law. The evidence which is relevant to these factors is summarized in the following paragraphs.
Throughout the parties' 15 year marriage, the parties relocated six times in order to further the husband's career. After they married in 1977, they lived for a year in St. Louis, Missouri, where the defendant husband attended graduate school. Thereafter, they moved to Minneapolis, Minnesota, where Mr. Friedman was Director of Adult Services for the Jewish Community Center. Thereafter, they moved to Chicago, where Mr. Friedman was employed for six months as the Executive Director of the Northeast Jewish Community Center of Chicago. In 1984, Mr. and Mrs. Friedman moved to Calgary, Canada, where Mr. Friedman was employed for four CT Page 11174 months at the Calgary Jewish Community Center. In 1985, Mr. Mrs. Friedman moved to Akron, Ohio, to be near the wife's parents.
While in Akron, Mr. Friedman pursued studies for a doctorate in social work. In 1988, he secured a position at Sacred Heart University in Fairfield, Connecticut. The family moved to Stratford, Connecticut, where they lived together until early 1993. The wife now lives in Orange, Connecticut, with the two children. The husband lives in Milford, Connecticut.
The parties went through a stressful period after the defendant lost his Calgary job. The defendant felt he was being unfairly criticized for being unable to financially provide for the family. The Friedmans did not, however, give up on their marriage until December of 1992. While both parties must share some degree of fault, it clearly appears to the court that the defendant was less committed to maintaining the marital relationship as evidenced by his extra-marital affairs. He must bear the greater degree of fault.
Sheryl Friedman is thirty-nine years old. She is in good health. She is well educated, having received three bachelor degrees from the University of Cincinnati. She has worked throughout the marriage. Generally, she has earned a larger portion of the family income than the defendant has earned. In Minneapolis, she worked at a hospital. In Akron, she taught part-time at a technical college and taught five year-old children at the Jewish Community Center. She is a certified medical technologist. When she moved to Connecticut with the family, she obtained employment at a laboratory in Branford where she earned $28,000 to $29,000 a year.
Mrs. Friedman is presently employed at Dianon Systems where she earns approximately $42,000 a year. While she has reached the top of the income level for her position, she should nevertheless continue to receive raises when her job performance is reviewed every eighteen to twenty months. After considering the wife's work history, her skills, and education, the court concludes that Mrs. Friedman should be able to maintain employment in her present position or in a position of similar status. Besides her net weekly income from Dianon Systems of $545.58, she receives $46.51 weekly from a trust fund. Thus, her total net income per week is $592.09.
Bruce Friedman is forty-one years old. He is in good health. CT Page 11175 Like Mrs. Friedman, he is well educated. He has a bachelors degree based on studies in religion and social work and a masters degree in social work. He has also completed course work for a doctorate in social work. The masters degree was obtained within the first year of the marriage. During this period, Mr. Friedman worked at various part-time jobs which included teaching Hebrew at a synagogue. His school costs were defrayed with loans and a scholarship from the National Jewish Welfare Fund.
After Mr. Friedman obtained his masters degree, he pursued a career with the Jewish Community Centers. He held his first position, which was Director of Adult Services for the Minneapolis Jewish Community Center, for five and one half years. He held his next two positions, which were in Chicago and Calgary, for relatively short periods. The loss of these last two jobs caused Mr. Friedman to become somewhat depressed. The family moved to Akron where Mr. Friedman held six part-time jobs. While living in Akron, he pursued a doctorate at Case Western Reserve University. His objective was to secure a position at a university.
In 1988, Mr. Friedman obtained a position at Sacred Heart University in Fairfield at a annual salary of $28,500. He also obtained jobs teaching Hebrew at Rodeph Sholom temple in Bridgeport and at the University of Bridgeport. His total income was $35,000.
Presently, Mr. Friedman is an assistant professor at Southern Connecticut State University. His gross salary there is $38,000 per year. His position is a temporary one and will be opened to competition in May of 1994. Mr. Friedman also maintains part-time employment. His total yearly gross income is $43,000. In May of 1994, Southern Connecticut State University will seek to fill Mr. Friedman's position on a full-time basis. If he is not the successful applicant, he should be able to obtain equivalent employment elsewhere considering his experience and education. Today, his net weekly income from the position at Southern Connecticut State University and three part-time jobs is $610.99.
The Friedmans have two children, Jaron, who is twelve years old, and Bryan, who is nine. The children attend Ezra Academy in Woodbridge. The school is a Jewish day school which provides an education through the eight grade. Jaron has attended the school since grade three and is now in the seventh grade. Bryan started at Ezra Academy in the first grade and is now in the third grade.
At the time Mr. and Mrs. Friedman decided to send their CT Page 11176 children to Ezra Academy, the both believed a Jewish education was important. Religion has always been important to the Friedmans. Both are Jewish. The family has always observed the sabbath, always observed religious holidays, and has always strictly followed dietary rules. Mr. Friedman prays every morning. He selected the family's residence in Stratford because it was within walking distance of a synagogue. The decision to send the children to Ezra Academy was in conformance with the parents' belief that an education in their faith would provide the children with the best preparation for their future.
Mr. Friedman no longer believes the children should attend Ezra Academy. He holds this belief despite the fact the he originated the idea of enrolling the children there. Mrs. Friedman believes the children should attend Ezra Academy.
Clearly, it is in the best interests of the children to attend Ezra Academy. Both boys are progressing well at the school. At this time in their lives, they need a sense of continuity which can best be given to them by their school friends and teachers. The court finds that the application of the Child Support Guidelines as the sole basis of determining the amount of child support would be inequitable and inappropriate in this case in view of the needs and best interests of the children.
The parents can afford to share the cost of Ezra Academy. The court has considered the cost of the tuition as well as the building and yearbook commitments. The court notes that when Mr. and Mrs. Friedman first enrolled their children at Ezra Academy their combined income was less than what it is now.
The court has considered the foregoing facts, the parties' various claims as to the receipt and expenditure of funds as well as their contentions with respect to their daily living expenses, liabilities, and the opportunity of each for future acquisition of capital assets and income.
The court, having dissolved the parties' marriage on November 17, 1993, enters the following orders:
1. The parties' written stipulation as to custody and visitation is incorporated into this decree.
2. Beginning December 27, 1993, the defendant husband shall pay weekly to the plaintiff wife in accordance with the Child CT Page 11177 Support Guidelines the sum of $235.00. In addition to the weekly child support, the defendant husband shall share equally with the plaintiff wife the cost of the childrens' education at Ezra Academy, which cost shall include tuition, balance of building fund commitment, and yearbook commitment.
3. The parties shall each be responsible for fifty percent of the $3,050 debt due Ezra Academy for past due tuition.
4. The plaintiff wife shall maintain for the benefit of the minor children all medical and dental insurance now in effect. The husband shall also obtain secondary medical and dental insurance for the children if it is available through his employer at nominal or no cost. All non-reimbursed medical expenses including dental, orthodontic, and psychological expenses shall be shared by the plaintiff and the defendant equally. No psychological, orthodontic expense, or elective surgery shall be incurred without the prior consent of the defendant husband, which consent shall not be unreasonably withheld.
5. The defendant husband shall continue to maintain, until the youngest child attains the age of eighteen, at least $100,000 of life insurance with the children as primary beneficiaries and the wife as the secondary beneficiary.
6. The parties shall take all necessary steps and appropriate action to sell the real property located in the State of Florida. After deducting the expenses of the sale, the parties shall equally share the proceeds of the sale.
7. The parties shall each pay fifty percent of the debt presently due on the ATT Mastercard. The plaintiff shall be responsible for the following obligations: Discover Card, First Card Visa. The defendant shall be responsible for the following obligations: defendant's student loan, loan from defendant's father, loan from defendant's uncle.
8. The plaintiff shall retain her interest in her trust fund, her Chase Bank account, and her 401 K plan.
9. The defendant shall retain his interest in his Lafayette Bank checking account, his shares of Putnam Growth Fund, and his IRA. CT Page 11178
10. The defendant shall be the sole owner of the 1989 Mercury Tracer automobile and the plaintiff shall execute any documents necessary to effectuate the transfer of title.
11. All personal property shall remain with the party now in possession with the exception of religious articles which the parties shall endeavor to divide. The court shall reserve jurisdiction for four months with respect to a division of these latter articles.
12. The support obligation may be enforced by a contingent wage garnishment as provided by General Statutes 52-362.
13. The plaintiff wife shall be entitled to claim the youngest child as a dependent on her federal income tax return. The defendant husband shall be entitled to claim the oldest child on his federal income tax return.
14. The defendant husband shall pay to the plaintiff wife one dollar a year as alimony until the first to occur of the following events: the death of either party; the remarriage of the plaintiff; the applicability of the cohabitation provisions of General Statutes 46b-86(b); the arrival of August 1, 1999.
15. The defendant husband shall cooperate with the wife should she desire to obtain at her expense the Jewish divorce document known as a Get.
16. Attorney Veronica E. Reich, who is counsel for the minor children, is awarded $3,630.00 for those services for which she has not yet received compensation. The plaintiff and defendant shall each be responsible for paying fifty percent of this amount.
Judgment shall enter in accordance with the foregoing.
GEORGE N. THIM, JUDGE CT Page 11179