[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action for a dissolution of marriage and other relief brought to the Judicial District of Danbury. Some of the facts which give rise to this action are not in dispute.
The plaintiff, Thomas Casey, and the defendant, whose maiden name was Gloria Ann Yates, intermarried on June 1, 1996 at Nantucket, Massachusetts. At least one of the parties has resided continuously in the state of Connecticut for at least twelve months immediately prior to the date that the complaint was filed. The marriage between the parties has broken down irretrievably without any reasonable prospects of reconciliation. The plaintiff and defendant have no children issue of the marriage, and no other children have been born to the defendant wife since the date of the marriage. Neither party has received public assistance from the State of Connecticut nor any town thereof. The court has jurisdiction over this matter. The court finds as follows:
 FACTS
The plaintiff, fifty-two years of age, is in good health and is employed as a pilot by American Airlines where he has been employed with American Airlines for many years, earning approximately $200,000 per year. This is his fourth marriage. Mr. Mrs. Casey initially met and began dating in 1992. Mrs. Casey is fifty-four years of age, has a bachelor's degree, a certificate in costume design and she is several credits short of a master's degree. She is employed as a flight attendant at American Airlines and this is her third marriage. She has two children from her second marriage, Drew and Lindsey, both of whom are in their early twenty's and residing with Mrs. Casey. She is working full-time and earning approximately $50,000 per year. Both of the parties have 401K accounts and established pensions with American Airlines.
During the time that they began dating, Mrs. Casey owned a home in Wilton, Connecticut. Sometime in 1993, she agreed to rent a small cottage CT Page 15451 on her property to Mr. Casey if he would absorb the expenses of renovating the cottage in lieu of rental payments. Mr. Casey resided in the cottage for about seven months and then moved to Greenwich until sometime in January of 1995. Mr. Mrs. Casey continued their friendship during 1994. At that time, Mrs. Casey was working as a flight attendant and in addition to her income had rental income from an apartment in her Wilton home, and also received unallocated alimony and support from her former husband, Stephen O'Connell. When Mr. O'Connell suddenly stopped paying the court ordered support, Mrs. Casey borrowed $7,000 from Mr. Casey in order to pursue relief in court against her ex-husband. By August of 1994, Mrs. Casey had overcome her financial difficulties and was financially self-reliant. Mr. Mrs. Casey began a romantic relationship, and Mr. Casey moved into the Wilton home some time around January of 1995. At that time, Mrs. Casey had a first mortgage on the Wilton home in the approximate sum of $75,000 paying principal and interest at approximately $600 per month. Her home was encumbered by a second mortgage to her ex-husband in the sum of $60,160. No monthly payment was due relative to the second mortgage. The Wilton property was appraised in May of 1995 at $535,000 demonstrating that Mrs. Casey had approximately $400,000 in equity in her home around the time that Mr. and Mrs. Casey were living together and prior to the marriage of June 1, 1996. At the time that the parties married, Mrs. Casey owned the Wilton home and Mr. Casey owned two planes, one was a Beech Aircraft and the other a Grumman Albatross. Mr. Casey brought no other assets to the relationship. At the time of the marriage, Mrs. Casey had refinanced the Wilton property and from the refinance paid off the two mortgages that encumbered her home. Mr. Casey received the balance of the proceeds with which he paid off the home equity loan Mrs. Casey had previously taken out between January and June of 1995, the proceeds of which had all gone to Mr. Casey. of the $265,000 refinance on the Wilton property, approximately $131,000 inured directly to the benefit of Mr. Casey, who used the sums to make improvements to or pay off loans against his airplanes.
At some point after the second anniversary of the marriage, Mrs. Casey quitclaimed one-half interest in the Wilton property to Mr. Casey. Sometime in January of 1999, Mr. Mrs. Casey sold the Wilton home for $466,000 and purchased a home in Sherman, Connecticut, for $465,000, increasing the amount of the mortgage to $372,000 on the Sherman home. The sum of $114,000 in cash was generated from the sale and purchase of the real estate which Mr. Casey deposited into his savings account. With those funds, he purchased a Rolls Royce automobile, a pontoon boat and a Jaguar automobile. These items were taken by Mr. Casey when he filed for divorce. Also from the $114,000, approximately $27,000 was spent on improvements to the Sherman property and to Mr. Casey's planes. CT Page 15452
Shortly after the parties moved the marital residence to Sherman, Mr. Casey engaged in sexual infidelities with other women without Mrs. Casey's knowledge and/or consent. When confronted by Mrs. Casey, Mr. Casey did not deny any of this misconduct.
The parties differ on the causes of the breakdown of the marriage. The plaintiff testified that he was troubled by many of the interactions between Mr. O'Connell and the O'Connell's children and that eventually believed that he represented nothing more than a pay check and that there was no emotion left in the relationship. Although the court finds that both parties engaged in conduct which ultimately caused the breakdown of the marriage, the court also finds that Mr. Casey and his sexual infidelities initiated the breakdown. The court finds Mr. Casey to be the primary cause of the breakdown of the marriage.
The court finds, based on all of the evidence presented regarding the fair market value of the Sherman home, that the fair market value is $725,000. It has a mortgage with a balance of approximately $360,000 and a net equity of about $365,000. The court finds that the Beech airplane has a value of $84,000 and that the Albatross plane has a value of $245,000, notwithstanding the significantly larger sums spent on the Albatross between 1995 and the present date. The court further finds that the exorbitant amount of money spent on the airplanes over this time period was the primary reason for the various increases in the mortgages during the marriage and prior to the marriage as well.
 ORDERS
In formulating property orders in this case, the court must consider the factors set forth in Connecticut General Statutes §§ 46b-81 and46b-82, together with the provisions of § 46b-62 regarding attorney's fees. The court has considered all of these factors in making its determinations and has considered all of the evidence, the parties' demeanor and credibility, their financial affidavits, their claims for relief, their proposed findings of fact and all of the applicable case law.
Since "it would serve no useful function to require the trial court ritualistically to rehearse the statutory criteria that it has taken into account;" Scherr v. Scherr, 183 Conn. 366, 368 (1981); this court will not recount those statutory criteria and the evidence other than that as has been previously stated. "The court is not obligated to make express findings on each of these statutory criteria." Weiman v. Weiman,188 Conn. 232, 234 (1982). The court must consider all of the statutory CT Page 15453 criteria in determining how to divide the parties' property in a dissolution proceeding; Lee v. Lee, 197 Conn. 1, 5 (1985); it need not give equal weight to each factor. Kane v. Parry, 24 Conn. App. 307,313-14 (1991).
With respect to property assignment and what alimony award, if any, is appropriate, the court is mindful that our alimony statute does not recognize an absolute right to alimony. General Statutes § 46b-82;Thomas v. Thomas, 159 Conn. 477, 487 (1970).
The court enters the following orders:
1. That the marriage between the parties be dissolved on the grounds of irretrievable and each party is declared to be single and unmarried as of the date of this judgment.
2. Neither party shall pay alimony to the other.
3. Mrs. Casey is awarded all right, title and interest to the marital residence situated in Sherman, Connecticut. She is ordered to assume responsibility to pay the mortgage, taxes, and insurance associated therewith, and to indemnify and hold harmless Mr. Casey therefor.
4. Mr. Casey is awarded all right, title and interest to the Albatross airplane and the Beech airplane. He ordered to pay all expenses and loans associated therewith and indemnify and hold harmless Mrs. Casey therefor.
5. The 1995 Jeep Cherokee is ordered to be the property of Mrs. Casey and the 1978 Rolls Royce along with the pontoon boat shall be the sole property of Mr. Casey. CT Page 15454
6. The parties shall maintain their own retirement accounts. Each party will be responsible for their attorney's fees.
7. The court orders that Mr. Casey pay in full any and all obligations due pursuant to the pendente lite orders up until the date of this judgment.
8. The parties are ordered to resolve the issue of any claims of personal property through mediation with the Family Relations division of the Superior Court. The items of personal property are limited to those items set forth in the plaintiffs list of property on page 13 of his brief, items A through K inclusive. ___________________ Rodriguez, J. CT Page 15455