[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action returnable November 5, 1991 for a dissolution of marriage and other relief brought by the plaintiff wife against the defendant husband.
The plaintiff whose date of birth is July 23, 1947 is presently 47 years of age. The plaintiff testified that she enjoys good health but is under doctor's care for rheumatoid arthritis which causes pain in her right hand, elbow and left ankle. CT Page 9731 Although more aggravating then disabling, it does require medication and monitoring. The plaintiff is employed as a teacher in the Darien School system. She teaches high school mathematics for grades 9 through 12. She is also, at the present time, co-adviser to the student government council and also an officer in the Darien Education Association. She is paid approximately $2,000.00 per year for serving as student government advisor and earns $1,700 per year as an officer in the Darien Education Association. Although the plaintiff does do some tutoring, the financial aspects are so minimal that they do not affect the finances of the parties.
In addition, the plaintiff is certified as a guidance counselor, but prefers teaching in the schoolroom.
The plaintiff has been employed in the Darien school system since 1978. As of July 1, 1994, the plaintiff is credited with 23.5 years of service through the State of Connecticut teachers, retirement system including 20 years in the State of Connecticut. Therefore, the plaintiff has a vested pension.
The defendant whose date of birth is October 23, 1939, is presently 54 years of age. The defendant enjoys good health. The defendant obtained a bachelors degree from Southern Connecticut State College in 1961; obtained a masters of science degree from Fairfield University in 1963 and obtained a certificate of administrative study in 1965. In addition, he is presently doing graduate work towards his doctorate at Columbia University in administrative/supervising education.
The defendant has been employed in the Stamford public system since 1961 on a continuous basis. His present position is Director of School Administration. Prior to working in administrative positions in the Stamford school system, he was employed as an elementary and middle school teacher for a total of 15 years. As of July 1, 1994, the defendant is credited with 33 years of service in the State of Connecticut teachers' retirement system, all years of which are in Connecticut. The defendant testified that he intends to retire in 1996 upon the completion of the 1995-1996 school year at which time he will have achieved 35 years of service in the State of Connecticut teachers' retirement system. His teachers' retirement benefits are wholly vested.
In addition, the defendant holds a real estate broker's license and is a principal in Shannon Realty. The defendant also CT Page 9732 works part-time in a local liquor store.
The parties were married in Stamford, Connecticut on November 11, 1979. This is the second marriage for both parties. This is a marriage of almost 15 years, although the parties physically separated in August of 1991. Subsequent to the return date of this action, the parties attempted reconciliation and in fact, this case was placed on a reconciliation status during the spring of 1992.
The marriage of the parties did not produce any issue. The first marriage of the plaintiff did not produce any issue; however, the first marriage of the defendant produced three children. The defendant's former wife also resides in Stamford and had legal residential custody of the defendant's three children by his prior marriage.
At the time of the instant marriage, the plaintiff understood and acknowledged that the defendant had a support/alimony obligation in the amount of $1,000 per month which would conclude in March of 1985 upon the defendant's youngest child attaining age eighteen.
Shortly prior to meeting the defendant, the plaintiff purchased certain real estate identified as 15 Cedar Crest Place in Norwalk at a purchase price of approximately $60,000 with a down payment of approximately $23,000 — $25,000 and a first mortgage in the amount of $35,000 — $37,000. This property was owned solely by the plaintiff. The parties occupied the premises at 15 Cedar Crest Place until January of 1988. At the suggestion of the defendant the premises were renovated and expanded, including increasing the number of bedrooms.
The defendant made some contribution towards these improvements including a cash outlay (obtained from his mother) and labor, which labor was primarily in the area of landscaping. However, the defendant over values his contribution to the real estate.
Contrary to the plaintiff's expectations at the time of her marriage to the defendant, his children from time to time, resided with them. The plaintiff found herself the mother of teenagers and testified in court, that it was like "giving birth to teenagers." This situation was a substantial factor in the erosion of the parties marriage. CT Page 9733
Another factor which led to the erosion of the marriage of the parties was that the defendant became involved in an extra marital relationship with one Carol Lacerenza. This affair may have started in the middle of 1988. Despite the plaintiff's well founded suspicions, the defendant, for quite some time, denied his involvement in the third-party extra marital affair. In fact, the defendant, after admitting to said affair, claimed that the affair had concluded but yet continued to be involved in said third-party extra marital affair. The plaintiff considered this a serious breach of their relationship and upon confrontation in the summer of 1991, the defendant vacated the marital home and began residence with said Carol Lacerenza with whom he presently resides.
It is also important to note, that the parties apparently experienced difficulty in communicating, especially in financial, social and sexual aspects. Both parties admitted to sexual incompatibility. Both parties maintained separate checking accounts, although they did achieve some agreement on various responsibility for various bills in running the household. The court feels that the plaintiff's lack of communication was just part of her basic personality. However, the court finds that the defendant's lack of communication, especially as regards to certain finances and social aspects was premeditated and deliberate. For instance, the defendant diverted substantial sums of money to his former wife and family in excess of his legal obligations to pay support/alimony. This was done without the knowledge of the plaintiff and she only learned about the defendant diverting so-called marital income after she discovered certain checks and check registers after the parties separated.
All-in-all, the plaintiff attempted to be a good wife, including mother to the defendant's children. And, in fact, was even willing to forgive the defendant's marital indiscretion as late as the spring of 1992. The defendant pursued his own agenda which ultimately led to the dissolution of the instant marriage.
In September of 1987, the parties purchased certain property known as 213 Wolfpit Avenue, Norwalk, Connecticut at a purchase price of $348,000. Initially, there was a first mortgage of $180,000 which was later increased to $280,000. The additional funds of approximately $100,000 were used to renovate and expand said premises. Said premises were taken in joint names of both parties. At the present time, the property is listed for sale at approximately $494,500. CT Page 9734
In determining the proper orders in this case, the court must consider the factors set forth in Connecticut General Statutes §§ 46b-81, 46b-82 and 46b-62. With respect to alimony and a division of the property of the parties, the law to be considered has been stated as follows:
 To begin with, our alimony statute does not recognize an absolute right to alimony, General Statutes § 46b-82; Thomas v. Thomas, 159 Conn. 477, 487, 271 A.2d 62 (1970); `This court has reiterated time and again that awards of financial settlement ancillary to a marital dissolution rest in the sound discretion of the trial court.' (Citation omitted.) Although the court is required to consider the statutory criteria of length of marriage, causes of dissolution, the age, health, station in life, occupation, amount and sources of income, assets and opportunity for future acquisition of assets, of each of the parties, (citation omitted), no single criterion is preferred over all others. In weighing the factors in a given case, the court is not required to give equal weight to each of the specified items. Nevertheless, it is rather obvious that in making financial determinations, the financial circumstances, both actual and potential, are entitled to great weight. Valente v. Valente, 180 Conn. 528, 530 (1980); Watson v. Watson, 221 Conn. 698, 710 (1992).
As has been said by the Appellate Court in the recent case ofEmanuelson v. Emanuelson, 26 Conn. App. 527, 530 531 (1992); "General Statutes § 46b-81 (c) requires the trial court to evaluate certain factors before distributing the parties' assets in a marital dissolution action. Although the court must evaluate all the factors listed, it has broad discretion when applying the statutory factors to assign the parties' assets. O'Neill v.O'Neill, 207 Conn. 806, 540 A.2d 374 (1988) . . . .
The statutory factors for determining alimony in § 46b-82 are almost identical to the factors used to distribute property in § 46b-81 (c)."
The court has considered all of the criteria of §§ 46b-81, 46b-82
and 46b-62 of the General Statutes and all of the evidence and the case law. Since "[it] would serve no useful purpose to require the trial court ritualistically to rehearse to the statutory criteria that it has taken into account," Scherr v. Scherr,
CT Page 9735183 Conn. 366, 368 (1981), this court will not recount those statutory criteria and the evidence other than as has been previously stated. "The court is not obligated to make express findings on each of these statutory criteria." Weiman v. Weiman, 188 Conn. 232, 234 (1992.
Suffice to say that the court must consider all the statutory criteria in determining how to divide the parties' property in a dissolution proceeding, Leo v. Leo, 197 Conn. 1, 5 (1985), and that the court need not give equal weight to each factor. Kane v.Perry, 4 Conn. App. 307, 313-14 (1991).
The court, in addition to the findings noted herein, finds as follows:
1. There is requisite jurisdiction
 2. The allegations of the complaint have been proved and are true.
3. There has been an irretrievable breakdown of the marriage.
The court enters the following orders:
1. A decree of dissolution of marriage shall enter on the grounds of irretrievable breakdown of the marriage.
2. The plaintiff's maiden name of Marcia Kasony is restored.
3. The real estate premises identified as 213 Wolfpit Avenue, Norwalk, Connecticut is ordered to be sold as reasonable soon as possible. The parties shall cooperate with each other as regards to selling said real estate, including but not limited to real estate agent, listing agreements, terms and conditions of sale. The net proceeds of sale after deducting the usual costs of sale including, but not limited to satisfaction of mortgages, real estate commission, real estate conveyance taxes, attorney's fees, plus or minus usual adjustments, shall be divided as follows:
The first $90,000 of net proceeds shall be awarded to the plaintiff, and the balance of the proceeds after deducting said $90,000 are hereby ordered divided equally between the parties.
The court retains jurisdiction over the terms and conditions of the sale of the real estate. CT Page 9736
4. The plaintiff shall retain all right, title and interest to that certain 1987 Toyota Camry automobile free from any claim by the defendant.
5. The plaintiff shall retain all right, title and interest to the contents and household furnishings situated in and at said 213 Wolfpit Avenue, Norwalk, Connecticut with the exception of the defendant's personal belongings and that list of personal property as set forth in plaintiff's Exhibit E, copy of which is attached hereto.
6. The defendant shall retain all right, title and interest to his personal belongings and to the items of personal property as contained in said plaintiff's Exhibit E free from any claim by the plaintiff.
7. The plaintiff shall retain all right, title and interest to her Gateway savings and checking accounts, United Credit Union of Norwalk account and one-half of the Union Trust joint checking account, free from any claim by the defendant.
8. The plaintiff shall retain all right, title and interest to her life insurance as shown on her financial affidavit, free from any claim by the defendant.
9. The plaintiff shall retain all right, title and interest to the IRA as shown on her financial affidavit free of any claim by the defendant.
10. The plaintiff shall retain all right, title and interest to her State of Connecticut Teachers' Retirement Pension, free from any claim by the defendant.
11. The plaintiff shall retain all right, title and interest to her Traveler's tax sheltered annuity free of any claim by the defendant.
12. The plaintiff shall retain all right, title and interest to the American Funds accounts, free of any claim by the defendant.
13. The defendant shall retain all right, title and interest to said 1984 Jaguar automobile free of any claim by the plaintiff.
14. The defendant shall retain all right, title and interest to the Gateway checking account standing in his name and one-half CT Page 9737 of the Union Trust joint checking account (as identified on the plaintiff's financial affidavit dated March 23, 1994), free from any claim by the plaintiff.
15. The defendant shall retain all right, title and interest to his life insurance free of any claim by the plaintiff.
16. The defendant shall retain all right, title and interest to his State of Connecticut Teachers' Retirement Pension, free of any claim by the plaintiff.
17. The defendant shall, by way of QUADRO, or other appropriate document(s) transfer one-half of that Travelers' tax shelter annuity standing in his name to the plaintiff.
The court shall retain jurisdiction over the form and style of said QUADRO, or other appropriate document(s).
18. The defendant shall pay the plaintiff the sum of $1,250 per month as a contribution towards the monthly mortgage payment relative to the premises at 213 Wolfpit Avenue. Said payment shall not be modifiable by either party and shall terminate upon the sale of the house. The defendant may claim the payment as alimony if he so desires in which case the plaintiff shall report said payments as income for income tax purposes and the defendant may deduct said payments for income tax purposes.
19. The defendant shall give to the plaintiff lump sum alimony in the amount of $45,000 payable in consecutive monthly installments in the amount of $750 commencing January 1, 1995 and continuing for 60 consecutive monthly payments.
20. No alimony is awarded to either party, other than as ordered in Paragraph 18 hereof.
21. Each party is responsible for their respective attorney, s fees.
22. Any other property standing in the names of the respective parties or to which they may be otherwise entitled shall remain that parties property, free and clear from any claim by the other.
Lastly, the court commends attorneys Parley and Wynn for their professional presentation and advocacy of their respective clients CT Page 9738 cases.
MORAN, J.
[EDITORS' NOTE: EXHIBIT ”E” IS ELECTRONICALLY NON-TRANSFERRABLE.]