[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This proceeding is an action for dissolution of a certain marriage CT Page 12648 between the parties which occurred in East Rockaway, New York, on July 26, 1969. The plaintiff has resided continuously in this jurisdiction at least twelve months next before the filing of the complaint. Four children were born of this union and all four are emancipated. They are Michael, who is thirty-one years old; Timothy, who is twenty-nine; Carrie, who is twenty-seven; and Tracy, who is twenty-five. No other children were been born to this lady since the date of the marriage. Neither party has received any assistance from the federal government, the state government, any local institution, or any public or private trust. The court finds that the marriage has broken down irretrievably and a decree may enter on the grounds of irretrievable breakdown.
The plaintiff is fifty-two years old and enjoys good health with the exception of a broken leg which is in the healing process at the moment. The parties were married in the summer following her first and only year of college at which time she was working as a store clerk. She has worked as a part-time bank teller, a teacher at Head Start nursery school in Danbury, an accounting person for Retail Leisure and in the same capacity for First Brands where she realized her maximum earning capacity to date of twenty-five thousand ($25,000) dollars per year. First Brands was purchased by Clorox in 1999, and, as a result of that acquisition, her department was eliminated. She collected a small severance package and unemployment compensation for six months following the termination at First Brands. She is presently seeking employment as an accounting person in her field of choice.
The defendant is fifty-one years old and in apparent good health. He holds an undergraduate degree as well as a master's, both of which were obtained as an evening student while he worked full-time. At that time, he was employed as a clerk at Merrill-Lynch. He stayed there for one year and then joined the New York Telephone Company where he stayed for approximately twenty-one years. When he left, he was in upper level management earning between eighty and ninety-one thousand ($80,000 to $91,000) dollars a year. The court accepts that range as his earning capacity.
They purchased their first home in Island Park, New York, in 1976 for approximately twenty-six thousand ($26,000) dollars. The down payment was achieved through savings and familial help. In 1976, he was transferred to White Plains. They moved to 150 South King Street in Danbury in 1977. In 1987, they purchased a condominium as investment or vacation property at the New Jersey shore for one hundred eighty thousand ($180,000) dollars. That property overlooks the beach and the water. Summer rental thereon ranges from eleven hundred ($1100) dollars a week to fifteen hundred ($1500) dollars a week. At one time, there were winter rentals of the unit which, however, were abandoned when the expenses thereof and CT Page 12649 repairs necessitated by the actions of the tenants, made it virtually more expensive than it proved to be worth.
After the defendant's termination at New York Telephone, he desired to start his own business. His initial attempts did not realize success. He began a company with a partner called Applied Image Technology which was concerned with what appears to be providing profiles of those attending seminars or job fairs to the sponsors of such seminars or fairs. The company was a Chapter S corporation, he had a forty (40) percent interest therein. The partner, one Rick Preston, was also the owner of Preston Productions, Inc.
After about five years, Preston Productions merged with, took over, or purchased Applied Image Technology, and he continued his employment with that entity as a vice-president, earning approximately eighty-three thousand ($83,000) dollars per year. Within the last month, his upper management group took a pay cut of twenty (20) percent for a period of ninety (90) days, at which time, that pay cut would be reexamined. That action reduced his salary to approximately sixty-six thousand ($66,000) dollars per year. While Applied Image Technology existed, expenses attributable to it were quite severe. Like all too many of our citizens, they availed themselves of the plastic curse (credit cards). In addition thereto, they took a home equity line of credit on the South King Street property which began at twenty thousand ($20,000) dollars and ended ultimately with a debt of seventy-three thousand ($73,000) dollars.
The plaintiff contends that it was a happy, healthy marriage until 1986. The defendant contradicts her testimony on that point. His version was that she was not supportive of him, was not happy, and was not caring. They lived in separate bedrooms for approximately nine months before he left in 1985. At that time, they had separate checking accounts and separate credit cards. That absence continued for approximately a period of two years when an attempt to reconcile occurred. The parties separated again in 1996 for the second and final time. He is now living, as counsel says, with a paramour in New Hampshire.
The South King Street property has been appraised two hundred fifteen thousand ($215,000) dollars, and has a mortgage currently on it in the amount of fifteen hundred ($1500) dollars. The New Jersey property, according to him, is valued at one hundred eighty-five thousand ($185,000) dollars, with a mortgage of one hundred thirty-seven thousand three hundred and twenty-two ($137,322) dollars.[1] In March of 2000, the plaintiff quitclaimed all of her right, title and interest in and to the New Jersey property to the defendant, and he conveyed all of his right, title and interest in and to the South King Street property to the plaintiff. It is disputed but there is testimony to the effect that they CT Page 12650 considered the properties of equal value, that being, one hundred eighty-five thousand ($185,000) dollars at the time. The South King Street property is in need of a new septic system, new roof, and various and sundry repairs to restore it to its former condition.
After the conveyance, the defendant then refinanced the condominium, and it was expected that the plaintiff would refinance the South King Street property. The refinance of the New Jersey property occurred, and the defendant transferred the home equity line of credit from South King Street to the Jersey property. The plaintiff did not refinance the South King Street property. Her reason for not so doing, according to her testimony, was that she had no credit, she was not working, and all she had was some alimony to show for income.
The defendant enjoys a pension from the New York Telephone Company, which he designates as Bell Atlantic Single Life Annuity, and which provides him with a two thousand one hundred forty-three ($2143) dollar monthly benefit. He also lists an IRA with Dean Witter in the present amount of thirteen thousand eighty-five ($13,085) dollars. Various sundry bank accounts aggregated three hundred thirty-six ($336) odd dollars. As a perquisite to his employment, he enjoys health insurance, and a one hundred thousand ($100,000) dollar New York Life Insurance Company policy. There is an outstanding loan for proceeds against said policy for twenty-six thousand two hundred ninety-five dollars ninety-seven ($26,295.97) cents. It is claimed that he received nothing from this loan and that it represents the annual premiums for that coverage. His explanation of the annual premiums, as well as the interest or dividend he receives on the policy, show a difference of approximately eight hundred ($800) dollars a year. He has owned the policy since approximately 1980, and the numbers that have been given to the court are at variance with what the court computes the impact thereof to be. He has invaded the IRA for purposes of paying approximately two thousand ($2000) dollars in alimony and fifteen thousand ($15,000) dollars for his daughter's wedding. Its current value is approximately thirteen thousand ($13,000) dollars.
The plaintiff shows a credit card indebtedness and several miscellaneous accounts in the amount of thirty-eight thousand eighty-nine dollars and thirty-three ($38,089.33) cents. She also declares an IRA with People's Bank in the amount of two thousand three hundred seven dollars and fifty-two ($2307.52) cents, and an IRA with the Union Savings Bank in the amount of three thousand two hundred ninety-two ($3292) dollars. The defendant shows a credit card balance of twenty-two thousand two hundred ninety-one ($22,291) dollars. He also shows educational loans in the amount of thirty-nine thousand one hundred thirty-five dollars and eighty-six ($39,135.86) cents. The couple also jointly own some sixty-two CT Page 12651 (62) shares of EMC stock. The value thereof has not been established sufficiently for the court to make a finding.
The family's second son, Timothy, is involved in a very unhappy and unfortunate marriage. His wife, according to the testimony, is addicted to pain-killing medication. She has left him and the three children, and lives in the upper regions of New York State. The plaintiff takes care of the three children for Timothy while he works as a security officer for approximately sixty or more hours per week. For this she receives remuneration, actually expenses, in the amount of one hundred fifty ($150) dollars per week. Currently, the children are with their mother for the summer, and he is now paying, while they are away, one hundred ($100) dollars per week. From those funds paid by Timothy, she purportedly purchases things for the children and food, denying that she uses any of it for her own benefit. Because of Timothy's financial situation, they are living with her in the house on South King Street. The children are six, five and three.
The plaintiff is now involved with another man and they are de facto engaged. He has provided her with a diamond ring which she wears. The defendant continues to reside with a lady in New Hampshire. She is the same person with whom he has been involved since shortly after he left the marital domicile.
In this matter, indeed, as in any dissolution proceeding, rarely does the court find a situation where fault for the breakdown can only be unequivocally assessed on one of the participants. This is no exception. However, it does appear that the defendant's action and lifestyle tip culpability against him. Our Supreme Court has declared a caveat on the overemphasis of fault in assigning that element its proper perspective. See Sands v. Sands, 188 Conn. 98, 102. It is merely one of the considerations to be applied in making an award. The court has considered that statute and each of its elements on the question of the award of the amount and term of alimony.
In accordance with the elements of the statute and the cases which speak to them as well as the evidence of the reduction in salary, which the defendant has recently experienced, he is ordered to pay to the plaintiff, as and for alimony, the sum of three hundred ($300) dollars per week, until such time as either party may die or the plaintiff remarries or cohabits with an unrelated male. Any finding of cohabitation, if indeed it occurs, shall be based upon the common law definition of the term.
The defendant is ordered to provide quarterly each and every pay voucher including bonuses, should there be any, to the plaintiff's CT Page 12652 counsel, so long as she is represented, and then to the plaintiff directly, if and when she is longer represented. "Quarterly" shall mean January 1, April 1, July 1, and October 1 of each year beginning on October 1, 2001. If and when the defendant's income increases to seventy-five thousand ($75,000) dollars, at any time during his obligation to pay alimony, the amount thereof shall be increased to three hundred seventy-five ($375) dollars per week. He is further ordered to provide counsel/client with a copy of his income tax returns signed by the preparer on or before June 1, 2002, and on June 1 of each and every year thereafter, again so long as his obligation exists.
Until or unless the plaintiff is employed and enjoys earning twenty-five thousand ($25,000) dollars, that income which she earns in such capacity shall not be considered a change in circumstances justifying a modification of the alimony award.
In entering any order of alimony, the court is obligated to "consider the length of the marriage . . . the causes for the . . . dissolution of the marriage . . . the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income. The court shall also consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates." General Statutes §§ 46b-81 (c), 46b-82. Dubicki v. Dubicki, 186 Conn. 709, 714-15; citing therein McPhee v. McPhee, 186 Conn. 161, 171; see Krieble v.Krieble, 168 Conn. 7, 8; Baker v. Baker, 166 Conn. 476, 478. The court has duly followed those statutory considerations.
In assigning marital property, "[t]he court shall also consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates." Section 46b-81 (c) of the General Statutes. The court is vested with broad discretion in dividing property so long as it considers all the relevant statutory criteria. It is not obligated to make express findings on each and is not required to give equal weight to each in determining an award. No single criterion is preferred over the others and the weight placed on each is dependent upon the circumstances of each case. Debowsky v. Debowsky,12 Conn. App. 525, 526-27; Carpenter v. Carpenter, 188 Conn. 736,740-41; Weiman v. Weiman, 188 Conn. 232, 234. The purpose of property assignment is to equally divide the ownership of the party's property. Once again, the court has considered these statutory criteria as well as the cases which speak to them.
With the statute and its criteria as well as the cases which address that statute, the plaintiff is awarded the marital domicile at 150 South CT Page 12653 King Street in Danbury, which is presently in her name. She is ordered to assume and to satisfy the mortgage thereon, as well as her credit card debt. The defendant is awarded the condominium located in New Jersey, and he is ordered to assume the mortgage thereon. Each of the parties is ordered to hold the other harmless from any and all claims arising out of the ownership, occupation and maintenance of those properties.
The defendant is ordered to cooperate with the plaintiff in her attempts to obtain medical coverage under the COBRA legislation, or any such other attempts she may make in achieving medical coverage. He is further ordered to retain his present life insurance policy with New York Life Insurance Company in the present face amount of eighty-eight thousand seven hundred seventy-eight ($88,778) dollars, as declared on his financial affidavit, so long as he is obligated to pay alimony to her. She shall be named as an irrevocable beneficiary throughout that period. The defendant is further ordered to pay over to the plaintiff or to cause to pay from the remainder of his IRA, the sum of sixty-one hundred ($6100) dollars. His pension plan shall be divided so that she receives an undivided one-half interest therein. This is to be accomplished by a Qualified Domestics Relations Order which shall be provided by counsel for the plaintiff, and any expenses therefor shall be the obligation of the plaintiff. The parties are further ordered to equally divided the EMC stock.
The plaintiff is ordered to pay over one-half of her IRA at People's Bank and her IRA at the Union Savings Bank, the amounts listed in her deferred compensation plan on her financial affidavit. Each of the parties shall be responsible for the respective debts set forth on their financial affidavits, with the sole exception, however, that the defendant shall also be solely responsible for the balance on the college tuition loans which are presently in the amount of thirty-nine thousand one hundred thirty-five ($39,135) dollars. Each shall hold the other harmless from any and all claims arising out of those debts. Each of the parties claims to be credited with frequent flyer mileage and/or hotel points. To the extent possible, AS REPRESENTED BY COUNSEL, the points/credits/mileage shall be added together and equally divided. Each of the parties is awarded the vehicles presently in their custody and each is ordered to hold the other harmless from any and all claims arising out of their ownership, maintenance, operation or occupancy. Each of the parties is ordered to be responsible for the payment of their respective attorney's fees without contribution from the other.
Judgment may enter in accordance with the foregoing.
Moraghan, J.T.R. CT Page 12654